UNITED STATES of America, Plaintiff–Appellee,

v.

James M. CHAPLIN, Defendant–Appellant.

No. 93–2942.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1994.

Decided June 6, 1994.

Steven M. Biskupic, Asst. U.S. Atty., Chris Larsen (argued), Milwaukee, WI, for plaintiff-appellee.

Annice Kelly (argued), Fox & Fox, Madison, WI, for defendant-appellant.

Before FAIRCHILD, CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

In this appeal, James M. Chaplin challenges the sufficiency of the evidence to convict him of three counts of perjury under 18 U.S.C. § 1621. Mr. Chaplin submits that the government failed to satisfy the evidentiary requirement of the two-witness rule. For

the reasons that follow, the judgment of the district court is affirmed in part and reversed in part.

## I

## BACKGROUND

Mr. Chaplin owned a firm that contracted with the state of Wisconsin to build pit toilets at various state parks. In May 1990, the state declared the contracts in default because the work was not being completed according to schedule. The state then filed a claim against Mr. Chaplin's bonding company, Transamerica Premiere Insurance. In turn, Transamerica, which had hired another contractor to complete the project, sued Mr. Chaplin. The state sought, along with other relief, the return of certain construction materials that had been delivered to the construction site. These materials included doors, toilets, and urinals. At a state court hearing on this matter in August 1990, Mr. Chaplin testified that the materials were in a trailer in the overflow parking area of the Peninsula State Park. After the hearing, agents of Transamerica were unable to find a trailer or any construction materials at that location.

Because of the cancellation of these contracts, Mr. Chaplin filed for bankruptcy on October 15, 1990. Transamerica filed a proof of claim and initiated two adversary proceedings.[1] In the course of the bankruptcy proceedings, Transamerica deposed Mr. Chaplin. During these depositions, Mr. Chaplin was asked under oath whether he had ever given his father-in-law, Joseph Voss, $8,000 in cash on October 23, 1990. Mr. Chaplin said that he did not recall doing so. Also, Mr. Chaplin was shown a picture, taken by Al Payment (who owned Voss' residence), depicting what appeared to be construction materials in Voss' garage. Mr. Chaplin denied ever putting the materials in the garage and stated that he did not recall ever removing them.

In November 1992, a grand jury returned a four-count indictment against Mr. Chaplin for crimes stemming from his involvement in the pit toilet project. Count One charged Mr. Chaplin with knowingly and fraudulently transferring and concealing his interest in certain property in violation of 18 U.S.C. § 152. The remaining counts charged Mr. Chaplin with committing perjury in his bankruptcy depositions in violation of 18 U.S.C. § 1621. The indictment set out the crucial deposition testimony underlying each count of perjury:

*Count Two*

Q. Mr. Chaplin, did you give Joseph Voss $8,000 in currency on October 23, 1990?

A. I don't recall doing that, no.

*Count Three*

Q. I'll represent to you that Mr. Al Payment testified in his deposition on February 6, 1992, that he took this picture [Payment exhibit 2] of his garage, on either August 23 or August 24, 1991. Did you ever deposit these materials in Mr. Payment's garage, Mr. Chaplin?

A. Assuming that what he's told you is correct, no.

*Count Four*

Q. Payment exhibit no. 2, Mr. Chaplin, which I'm showing you right now, Mr. Voss testified that those materials were in the garage where he resides on Laveau Lane in Oconto and that you removed them in January of 1992, did you remove any materials from Mr. Voss' garage in January of 1992?

A. Two things there, that makes a presumption that what he says is correct and then you ask the question did I remove any materials from his garage in 1992. I don't recall doing that, no. As to whether or not he may have said that I don't know about that either.

R.1.

With respect to the $8,000 payment, Voss testified at Mr. Chaplin's trial that Mr. Chaplin had asked Voss to purchase some real estate for him. To accomplish this, Mr. Chaplin gave Voss $8,000. Voss said this transfer occurred "[p]robably about October

---

1. One of these proceedings was against Mr. Chaplin; the other was against Mr. Chaplin and his wife.

of '90." Tr. 92. Banking records show that Voss deposited $8,000 on October 23, 1990. The banking records further show that, on the same day, Voss obtained a cashier's check for $8,000 made payable to Mr. Chaplin's new corporation, Neo–Genesis, Inc., and a real estate company. An IRS examination of Mr. Chaplin's finances revealed that Mr. Chaplin had over $8,000 in unaccounted-for cash up until at least October 23, 1990.

With respect to how the materials came to be in the garage, Voss testified on direct examination as follows:

Q. When you were living in the property on Laveau Lane did Mr. Chaplin store anything in the garage?

A. Yes, he did.

Tr. 96. Voss was never asked to elaborate on how he knew that Mr. Chaplin stored the materials in the garage. Al Payment, Voss' landlord, testified that he observed some materials labelled as Mr. Chaplin's in the garage in August 1991. He indicated that the materials consisted of outhouse inserts and door frames. He took a photograph of these materials, although the labels are not visible in the picture. He admitted that he had no idea whether Mr. Chaplin put the materials there.

Voss testified that the materials had been removed from the garage by February or March 1992; he did not testify that Mr. Chaplin removed the materials. Donald Rhode, one of Voss' neighbors, testified that he saw Mr. Chaplin driving away from the Voss residence in a pickup truck. He stated that the pickup truck was carrying doors and door frames. He believed this incident occurred shortly after the first of the year in 1992.

In his testimony, Mr. Chaplin denied that he gave $8,000 to Voss for the purchase of any land. He further testified that, although he still did not recall storing any materials in the garage, after his deposition he had spoken with former employees and it was possible that the materials had been stored there.

A jury convicted Mr. Chaplin on all four counts on May 21, 1993. The district court sentenced Mr. Chaplin to serve one year of imprisonment for each of the four counts. The sentences were to be served concurrently. The court also sentenced Mr. Chaplin to make restitution in the amount of $47,410.00.

## II

### ANALYSIS

■ On appeal, Mr. Chaplin leaves unchallenged Count One, which charged him with concealing assets in violation of 18 U.S.C. § 152. He does, however, make a sufficiency of the evidence challenge to the remaining counts, Counts Two through Four, which charged Mr. Chaplin with committing perjury in violation of 18 U.S.C. § 1621. Specifically, Mr. Chaplin claims that, even viewing the evidence in the light most favorable to the government, no rational trier of fact could have concluded that the government proved beyond a reasonable doubt that any of the three allegedly false statements he made were, in fact, false. Mr. Chaplin submits that, in a prosecution for perjury under 18 U.S.C. § 1621, the government can secure a conviction only in conformity with the two-witness rule, and that the government failed to so conform its proof in Counts Two through Four.[2]

2. The parties have not informed us whether the district court was ever advised about the possible applicability of the two-witness rule or whether the defendant ever argued to the court that, as a matter of law, the proper application of the rule rendered the evidence insufficient to permit consideration by the jury. Our own examination of the record suggests that these matters were not discussed with the district court. We also note that no objection was raised to the district court's submission of the case to the jury without the instructions describing the duties of the jury in assessing the evidence under the two-witness rule. See Weiler v. United States, 323 U.S. 606, 610–11, 65 S.Ct. 548, 550–51, 89 L.Ed. 495

(1945); United States v. Nicoletti, 310 F.2d 359, 361 (7th Cir.1962), cert. denied, 372 U.S. 942, 83 S.Ct. 935, 9 L.Ed.2d 968 (1963). Although contending on appeal that the instructional error must be reviewed under a plain error standard, the government makes no such claim with respect to the sufficiency of the evidence argument.

To the extent that the matter of the sufficiency of the evidence is controlled by the plain error standard of Federal Rule of Criminal Procedure 52(b), we believe that the criteria for that rule are met. See United States v. Olano, —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). As we demonstrate in the text of this opinion,

## A. *Principles of Law*

■ A person may be convicted of perjury if (1) he was under oath before a competent tribunal, (2) in a case in which a law of the United States authorizes an oath to be administered, (3) and he gives false testimony, (4) concerning a material matter, (5) which testimony was given with the willful intent to provide false testimony. *See* 18 U.S.C. § 1621;[3] *United States v. Dunnigan*, —— U.S. ——, ——, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993) (stating generally accepted definition of perjury under federal law).

■ In the instant case, Mr. Chaplin challenges the government's proof with respect to the third element of the offense: the giving of false testimony. In attempting to establish this element, the government faces certain hurdles not present in other prosecutions. First, the Supreme Court has established a strict standard for what constitutes falsity for the purposes of § 1621. In *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the Court held that an answer under oath that is literally true but not responsive to the question, and arguably misleading, is not a violation of 18 U.S.C. § 1621. Second, at trial, the government must meet, as a general matter, a heightened evidentiary standard for establishing falsity. Under the so-called "two-witness rule," "the uncorroborated oath of one witness is not sufficient to establish the falsity of the testimony of the accused as set forth in the indictment as perjury." *Hammer v. United States*, 271 U.S. 620, 626, 46 S.Ct. 603, 604, 70 L.Ed. 1118 (1926). The two-witness rule "does not literally require the direct testimony of two separate witnesses, but rather may be satisfied by the direct testimony of one witness and sufficient corroborative evidence." *United States v. Diggs*, 560 F.2d 266, 269 (7th Cir.), *cert. denied*, 434 U.S. 925, 98 S.Ct. 404, 54 L.Ed.2d 283 (1977); *see also Weiler v. U.S.*, 323 U.S. 606, 610, 65 S.Ct. 548, 550, 89 L.Ed. 495 (1945). The two-witness rule has two aspects: (1) the falsity of the testimony must be established by more than the uncorroborated oath of one witness, and (2) circumstantial evidence, no matter how persuasive, will not by itself support a conviction for perjury. *See* President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society* 141 (1967).

The two-witness rule arose in England, during the seventeenth century. At that time, the common law courts assumed jurisdiction over perjury cases with the abolition of the Court of Star Chamber, which had followed the practice of the ecclesiastical courts of requiring two witnesses. As a result, even in the common law courts, in which the testimony of a single witness was usually sufficient, *see* 4 William Blackstone, *Commentaries* 909 (Bernard C. Gavit ed. 1941), a perjury conviction could be obtained only on the testimony of two witnesses. *See* 7 *Wigmore on Evidence* § 2040(a), at 359–60 (Chadbourne rev. 1978). The theoretical justification for this approach was that

> in all other criminal cases the accused could not testify, and thus one oath for the prosecution was in any case something as against nothing; but on a charge of perjury the accused's oath was always in effect in evidence and thus, if but one witness was offered, there would be merely … an oath against an oath.

there was error in the application of the rule with respect to two of the perjury counts. We also believe that, in light of the government's theory of the case, as set forth in its indictment and in light of the controlling precedent of the Supreme Court and of this court, the error must be considered "plain." In our view, the defendant has amply demonstrated that the error was prejudicial and that, with respect to the counts at issue, it affected his substantial rights. While invocation of the plain error doctrine is permissive, *Olano*, —— U.S. at ——, 113 S.Ct. at 1779, we ought to invoke it in this case because our refusal to do so would seriously affect the fairness of the criminal proceedings. *Id.*

**3.** Section 1621 provides in relevant part:

> Whoever … having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true … is guilty of perjury….

*Id.* at 360. In light of modern notions of the function of the jury, this original justification of the two-witness rule provides a very weak rationale for the application of the rule in the contemporary trial setting. As the Supreme Court noted in *Weiler:*

> Our system of justice rests on the general assumption that the truth is not to be determined merely by the number of witnesses on each side of a controversy. In gauging the truth of conflicting evidence, a jury has no simple formulation of weights and measures upon which to rely. The touchstone is always credibility; the ultimate measure of testimonial worth is quality and not quantity. Triers of fact within our fact-finding tribunals are, with rare exception, free in the exercise of their honest judgment to prefer the testimony of a single witness to that of many.

*Weiler,* 323 U.S. at 608, 65 S.Ct. at 549. Nevertheless, despite the modern practice of allowing the jury to prefer the testimony of one to many, the Court in *Weiler* refused to abandon the two-witness rule. While the original rationale did not reflect the needs of the modern jury trial, another reason justified its maintenance:

> Since equally honest witnesses may well have differing recollections of the same event, we cannot reject as wholly unreasonable the notion that a conviction for perjury ought not to rest entirely upon an "oath against an oath." The rule may originally have stemmed from quite different reasoning, but implicit in its evolution and continued vitality has been the fear that innocent witnesses might be unduly harassed or convicted in perjury prosecutions if a less stringent rule were adopted.

*Id.* at 609, 65 S.Ct. at 550. Thus, although criticized by some,[4] the two-witness rule remains viable in perjury prosecutions, at least in those perjury prosecutions brought under a statute in which the rule has not been expressly abrogated.[5]

Application of the two-witness rule becomes problematic when the allegedly perjurious statement concerns the defendant's state of mind. We addressed this situation in *United States v. Nicoletti,* 310 F.2d 359 (7th Cir.1962), *cert. denied,* 372 U.S. 942, 83 S.Ct. 935, 9 L.Ed.2d 968 (1963). Defendant Nicoletti had testified during the trial of another person that he did not recall being interviewed by two FBI agents in 1959. Nicoletti was subsequently convicted for perjury for making this statement, but he argued on appeal that the evidence adduced at his trial for perjury was insufficient under the two-witness rule to sustain his conviction. The government argued that the two-witness rule was inapplicable because recollection cannot be proved by means of direct evidence, but rather only by circumstantial evidence. *Id.* at 361. We agreed with the government that it is not possible to prove a defendant's state of mind except through circumstantial evidence, and we therefore held the two-witness rule not to apply in such situations. *Id.* at 363. We noted, however, that "in the ordinary perjury prosecution ... the false statement is not a statement of belief, but rather, a false statement of some objective fact." *Id.* at 362.

### B. *Application*

#### 1.

■ The circumstances of this case present an initial question of characterization that implicates the exception to the two-witness rule established in *Nicoletti.*

---

4. The two-witness rule has been criticized as an historical anachronism. *See* 7 *Wigmore on Evidence* § 2041(b), at 361 (Chadbourne rev. 1978) (stating that the two-witness rule "is in its nature now incongruous in our system"); *cf. United States v. Marachowsky,* 201 F.2d 5, 11 (7th Cir.), *cert. denied,* 345 U.S. 965, 73 S.Ct. 949, 97 L.Ed. 1384 (1953).

5. Congress has, for instance, abolished the two-witness rule in prosecutions brought under 18 U.S.C. § 1623, which concerns false declarations made before a grand jury or a court. In part, 18 U.S.C. § 1623(e) provides: "It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence." We have noted previously that the "language of section 1623 abolishing the two-witness rule clearly applies only to prosecutions under that section. In cases brought under section 1621, the two-witness rule still stands." *United States v. Diggs,* 560 F.2d 266, 269 (7th Cir.), *cert. denied,* 434 U.S. 925, 98 S.Ct. 404, 54 L.Ed.2d 283 (1977).

In Counts Two and Four, Mr. Chaplin's allegedly perjurious deposition testimony involved answers that arguably referred to his state of mind. Specifically, in Count Two, Mr. Chaplin was charged with testifying falsely when he denied giving Voss $8,000 on October 23, 1990 by saying, "I don't recall doing that, no." In Count Four, Mr. Chaplin was charged with testifying falsely when he denied removing materials from Voss' garage by again saying, "I don't recall doing that, no." Because the statements include a reference by the defendant to his state of mind, we must determine, as a threshold matter, whether the *Nicoletti* exception applies to these statements. On the one hand, to his response "I don't recall doing that," the defendant added a categorical "no." That "no" could be interpreted as converting a statement regarding merely his recollection into a flat-out denial (that he gave Voss $8,000 or that he removed the materials from the garage). On the other hand, in each answer, the "no" could be interpreted as an inconsequential tack-on at the end of his response. Upon close examination of the entire record, we do not believe that the government can escape the application of the two-witness rule by characterizing Mr. Chaplin's answers as statements of belief about his recollection of the event in question. In the indictment, the government charged that the defendant's perjurious statements were denials that he had given Voss $8,000 on the date in question and that he had removed the materials from the garage. Moreover, the record reveals that it was this theory that the government presented to the jury in its opening statement.[6] We believe that the government must now live with the characterization of the case that it initially presented to the jury at trial.[7]

### 2.

With the threshold matter of characterization resolved, we turn to a determination of whether there was compliance with the two-witness rule in this case.

### a. Count Two: The $8,000 transaction

■ Count Two of the indictment charged that Mr. Chaplin lied when he stated that he did not recall giving Voss $8,000 on October 23, 1990. Mr. Chaplin argues that the government failed to produce any evidence that Mr. Chaplin gave Voss $8,000 on October 23, 1990. Voss merely testified that Mr. Chaplin gave him money "[p]robably about October of '90." Tr. 92. Mr. Chaplin claims that, in the absence of any testimony from at least one witness placing the date of the transaction on October 23, 1990, the perjury conviction cannot be sustained as to count two of the indictment. The government argues that

---

**6.** In his opening statement, the prosecutor stated:

> Count 2 arises from a deposition in which an attorney for Transamerica Insurance asks this defendant point blank did you give Joseph Voss $8,000, and this defendant answers under oath no, I did not. Counts 3 and 4 have to do with the concealment of the State of Wisconsin materials in the garage. This defendant was asked under oath did he ever put those materials in the garage or were those materials from the project. He says no.
>
> Tr. 41–42.

**7.** Our conclusion in this regard has little effect on the government's argument in this court. In its brief, which contains but five pages of argument, the government appears to pursue, as its principal position, that it has met the two requirements of the two-witness rule. Only in the alternative does the government suggest that the *Nicoletti* rule might apply to this case. At oral argument, we asked the parties whether the *Nicoletti* rule applies to Mr. Chaplin's statements in Counts Two and Four. Counsel for both Mr.

Chaplin and the government took the position that *Nicoletti* would apply only to the prosecution's efforts to prove a defendant's state of mind concerning whether he actually recalled the underlying fact. Both Mr. Chaplin and the government stated that the exception would not apply to the prosecution's attempt to prove the *existence* of the underlying fact. Under this view, the government did not need to produce direct evidence concerning Mr. Chaplin's recollection; on that matter, the jury was entitled to rely on circumstantial evidence. However, the government took the position that it was required to prove with direct evidence that Mr. Chaplin gave Voss $8,000 on October 23, 1990, and that Mr. Chaplin removed the materials from the garage. We need not decide here whether this bifurcated approach to the obligations of proof can be squared with the caselaw. *See United States v. Hagarty*, 388 F.2d 713, 716 n. 2 (7th Cir.1968); *United States v. Nicoletti*, 310 F.2d 359, 363 (7th Cir.1962), *cert. denied*, 372 U.S. 942, 83 S.Ct. 935, 9 L.Ed.2d 968 (1963); *see also Gebhard v. United States*, 422 F.2d 281, 287–88 (9th Cir. 1970).

Voss' testimony and the dates on Voss' bank records show that the date of the transaction was October 23, 1990. The parties essentially disagree on two issues with respect to Count Two: (1) whether the particular date of the alleged transaction is material to the government's case; and (2) if so, whether the government may prove the date by circumstantial evidence.

■ The specific date of the transaction *is* material to Count Two. The indictment charged Mr. Chaplin with committing perjury when he denied giving Voss $8,000 on October 23, 1990. If, for example, Mr. Chaplin gave Voss $8,000 on October 22, 1990, then his statement would be literally true, although perhaps misleading. The literal truth of the statement would be a complete defense to perjury. *See Bronston v. United States*, 409 U.S. 352, 360, 93 S.Ct. 595, 600, 34 L.Ed.2d 568 (1973) (stating that § 1621 is not to be invoked "simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth"). The government suggests that the date of the alleged transaction is not material because, at his perjury trial, Mr. Chaplin denied ever giving Voss $8,000. We disagree. The question in this appeal is not whether Mr. Chaplin lied during his perjury trial, but rather whether he lied in his bankruptcy depositions. To establish that he did lie, the government needed proof that his answer in that bankruptcy proceeding was literally false, which necessarily includes proving that the transaction occurred on October 23, 1990.

We now consider whether the government proved that the alleged transaction occurred on October 23, 1990. As we indicated above, the two-witness rule applies to this count, and it requires the testimony of at least one witness that the testimony was false and sufficient corroborating evidence to support the assertion of that witness. *Diggs*, 560 F.2d at 269–70. The requirements of this rule were not fulfilled. The government failed to provide direct evidence of the transaction date. Voss merely testified that the

transaction took place sometime in October 1990. Voss' bank records show that he deposited $8,000 in his bank account on October 23, 1990, but he could have obtained the money from Mr. Chaplin before that date. There is thus no direct evidence that Mr. Chaplin made the payment in question on October 23. This situation is comparable to the one that faced our colleagues in the Second Circuit in *United States v. Chestman*, 903 F.2d 75 (2d Cir.1990), *vacated in part on reh'g*, 947 F.2d 551 (2d Cir.1991) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 1759, 118 L.Ed.2d 422 (1992).[8] In *Chestman*, the indictment charged that Chestman falsely testified before the SEC when he stated that he had not spoken with Loeb (a client) before the purchase of certain stock, which occurred at 9:49 a.m. The government produced evidence only that Loeb spoke with Chestman some time prior to 10:30 a.m. The Second Circuit reasoned that the government had failed to establish the falsity of Chestman's testimony because no witness could place the Loeb's phone call to Chestman before 10:30 a.m. The court concluded that the two-witness rule had not been satisfied, and, consequently, reversed Chestman's perjury conviction due to insufficient evidence. *Id.* at 81.

The government submits that Voss' testimony suggests that he received the $8,000 from Mr. Chaplin and then immediately deposited it in his bank account. Because the deposit occurred on October 23, the implication is that Voss received the money on the twenty-third as well. This suggested chronology of events does not contradict anything in Voss' testimony. Nevertheless, it does not constitute direct evidence that the money was received on October 23. On the record before us, that conclusion can be reached only by an inference; the government adduced no direct evidence that Mr. Chaplin gave Voss $8,000 on October 23, 1990. Accordingly, like the judges of the Second Circuit in *Chestman*, we hold that the govern-

---

**8.** The panel decision in *Chestman* was vacated only with respect to the securities and mail fraud convictions. The full court "did not rehear the appeal from the perjury conviction and, as a result, the panel's reversal of that conviction stands." *Chestman*, 947 F.2d at 554.

ment has failed to meet the requirements of the two-witness rule. Mr. Chaplin's conviction under Count Two cannot stand.[9]

b. Count Three: Depositing materials in the garage

■ Count Three of the indictment alleged that Mr. Chaplin lied when he denied depositing the materials in the garage at Voss' residence. Mr. Chaplin argues that the government failed to produce the testimony of any witness who claims to have seen Mr. Chaplin put the materials in the garage. The government points to the following testimony from Voss:

Q. When you were living in the property on Laveau Lane did Mr. Chaplin store anything in the garage?

A. Yes, he did.

Tr. 96. Viewing the evidence in the light most favorable to the government, this testimony satisfies the requirement that at least one witness testify directly to the falsity of the defendant's statement.

Mr. Chaplin raises several arguments as to why Voss' testimony does not constitute direct evidence that Mr. Chaplin deposited materials in the garage. Mr. Chaplin argues that Voss was exceedingly vague with respect to how exactly he knew Mr. Chaplin stored materials in the garage. But Mr. Chaplin failed to object at trial that Mr. Voss lacked personal knowledge of the matter. *See* Fed.R.Evid. 602. Indeed, Mr. Chaplin's attorney never asked Voss on cross-examination how he knew that Mr. Chaplin stored the materials in the garage. To the extent Mr. Chaplin is arguing that there is no direct evidence that he put the materials in the garage because Voss did not say that he saw Mr. Chaplin put the materials there, we disagree. A permissible interpretation of Voss' testimony is that he observed Mr. Chaplin store the materials in the garage or that he

had first-hand knowledge that the materials were stored there at Mr. Chaplin's direction.

We also cannot accept the supposed distinction between the words "store" and "deposit." At trial, Voss indicated that Mr. Chaplin "stored" the materials in the garage; in the deposition, Mr. Chaplin denied "depositing" the materials in the garage. Mr. Chaplin now argues that there was no direct evidence that he personally "deposited" the materials in the garage, only that he "stored" them there. Relying upon this semantical distinction, he submits that, under *Bronston*, his deposition testimony was not false for purposes of § 1621. The semantical distinction is of no help to Mr. Chaplin. One of the meanings of "store" is "[t]o deposit (goods furniture etc.) in a store or warehouse for temporary preservation or self-keeping." 16 Oxford English Dictionary 790 (2d ed. 1989). Although "store" has other meanings, we must view the evidence in the light most favorable to the government. It was hardly unreasonable for the jury to conclude that Voss meant that Mr. Chaplin deposited the materials in the garage. We conclude that Voss' testimony constituted direct evidence that Mr. Chaplin deposited the materials in the garage.

In addition to direct evidence from one witness, the two-witness rule requires sufficient corroborating evidence, which we have described as "independent evidence so corroborative of the direct testimony that the two when considered together are sufficient to establish the falsity of the accused's statements under oath beyond a reasonable doubt." *United States v. Diggs*, 560 F.2d 266, 270 (7th Cir.), *cert. denied*, 434 U.S. 925, 98 S.Ct. 404, 54 L.Ed.2d 283 (1977). Here, the government presented the testimony of Al Payment. Payment testified that he observed "outhouse inserts and door frames" in the garage in August 1991. He also testified

---

9. Our conclusion that Mr. Chaplin's conviction under Count Two cannot stand due to insufficient evidence is not undermined by the jury's verdict in Count One that the government proved beyond a reasonable doubt that Mr. Chaplin concealed assets by giving Voss $8000 for the purchase of real estate. There are two reasons for this. First, Count One charged that "[o]n or about October 23, 1990," Mr. Chaplin gave Voss $8000. Thus, for Count One, the exact date of

the transaction was not material. Second, because Count Two involved an alleged violation of § 1621, the government was required to shoulder the heavier evidentiary burden demanded by the two-witness rule. Thus, what constitutes sufficient evidence for a normal conviction does not necessarily constitute sufficient evidence for a perjury conviction under § 1621 due to the two-witness rule.

that these materials were labelled as Mr. Chaplin's. In addition, the government introduced a photograph taken by Payment showing the materials in the garage. Payment admitted that he did not know who put the materials in the garage, but such testimony from him was not necessary. Payment's testimony, which was not inherently unreliable, substantiated to a significant degree the testimony of Voss. It thus constituted corroboration sufficient to satisfy the two-witness rule. *See Weiler,* 323 U.S. at 610, 65 S.Ct. at 550 ("Two elements must enter into a determination that corroborative evidence is sufficient: (1) that the evidence, if true, substantiates the testimony of a single witness who has sworn to the falsity of the alleged perjurious statement; (2) that the corroborative evidence is trustworthy."); *see also* 7 *Wigmore on Evidence* § 2042, at 369 (Chadbourne rev. 1978) ("[C]orrboration is required for the perjured fact as a whole, and not for every detail or constituent part of it."). Together, the testimony of Voss and Payment was sufficient to establish beyond a reasonable doubt the falsity of Mr. Chaplin's deposition testimony referred to in Count Three. The two-witness rule was satisfied.

c. Count Four: Removing materials from the garage

▆ Count Four alleged that Mr. Chaplin lied when he stated in his deposition that he did not remove the materials from the garage at Voss' residence. Mr. Chaplin argues that the government offered no testimony from any witness that he removed the materials from the garage. The government counters that the testimony of Voss' neighbor, Donald Rhode, demonstrates that Mr. Chaplin removed the materials.

The government's evidence that Mr. Chaplin removed the materials from the garage is entirely circumstantial. Donald Rhode testified that he saw Mr. Chaplin driving away from Voss' residence in a pickup truck with a load of doors and door frames. He did not testify that Mr. Chaplin removed them from the garage; he did not even say that they were from the garage. Voss merely testified that the materials were kept in his garage until February or March of 1992. He did not say who removed them. Thus, there is no direct evidence that Mr. Chaplin removed any materials from the garage. We must make our determinations on the basis of the cold record. Whether counsel for the government failed to ask the requisite questions in his examination of the witness out of inadvertence or design is not a matter that can concern us. The required information is not in the record. Hence, the government failed to satisfy the two-witness rule with respect to Count Four.[10]

Conclusion

For the foregoing reasons, Mr. Chaplin's convictions on Counts One and Three are affirmed. His convictions on Counts Two and Four are reversed. As is the practice in this circuit, we shall remand this case to the district court for reassessment of the sentence. *See United States v. Lowry,* 971 F.2d 55, 66 (7th Cir.1992); *United States v. Cea,* 914 F.2d 881, 889 (7th Cir.1990).

AFFIRMED in part, REVERSED in part and REMANDED.

10. Mr. Chaplin also argues that the district court committed plain error when it failed to instruct the jury on the two-witness rule. In light of our resolution of this appeal, this argument is moot with respect to Counts Two and Four. With respect to Count Three, the argument fails because there was sufficient evidence to satisfy the two-witness rule, and it thus is not probable that the outcome of the case would have been different if the instruction had been given. *Cf. United States v. Onumonu,* 999 F.2d 43, 46 (2d Cir.1993) (stating that the "two-witness rule is not an element of the crime" but rather a "common law evidentiary standard"); *Gebhard v. United States,* 422 F.2d 281, 286 (9th Cir.1970) (describing two-witness rule as a "quantum of proof"). Absent such prejudice, we do not find the failure to give an instruction on the two-witness rule to constitute reversible plain error. *See United States v. Olano,* — U.S. —, — – —, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993) (stating that in most cases the asserted Rule 52(a) plain error "must have been prejudicial: It must have affected the outcome of the District Court proceedings"); *United States v. Davis,* 15 F.3d 1393, 1408 (7th Cir.1994) (same); *United States v. Rose,* 12 F.3d 1414, 1422 (7th Cir.1994) (same).