UNITED STATES of America,
Plaintiff–Appellee,

v.

Luis A. PEREZ, Defendant–Appellant.

No. 93–3003.

United States Court of Appeals,
Seventh Circuit.

Argued March 30, 1994.

Decided Dec. 22, 1994.

**1132**

Timothy O'Shea (argued), Office of U.S. Atty., Madison, WI, for plaintiff-appellee.

Margaret Danielson (argued), Madison, WI, for defendant-appellant.

Before BAUER, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

On the evening of January 13, 1993, Luis Perez, an inmate at the Federal Correctional Institution at Oxford, Wisconsin (FCI–Oxford), slashed the throat of his cellmate Faustino Calderon–Abeja ("Calderon"). Mr. Perez was convicted by a jury of assault with intent to commit murder and of possession of a prohibited object intended as a weapon. The district court sentenced Mr. Perez to twenty years of imprisonment on count I and a consecutive five years of imprisonment on count II. On appeal, Mr. Perez raises issues concerning a jury instruction and his sentence. For the reasons that follow, we reverse the judgment of the district court.

## I

### BACKGROUND

#### A. *Facts*

On the evening of January 13, 1993, Mr. Perez cut the face, neck, and shoulders of his cellmate and former co-conspirator Calderon with a razor blade, and then walked to the office of the evening watch officer to report it. Calderon's wounds, requiring approximately 108 stitches, were serious but did not result in his death.[1] The next day a search of a trash bag in the laundry room uncovered two razor blades stuck to a piece of black electrical tape.

This altercation stemmed from events years before. The two men had been arrested together in Chicago on May 8, 1987, after delivering a kilogram of cocaine to an undercover federal agent. Following their convictions, Mr. Perez apparently blamed Calderon for his thirteen-year sentence and his lost $25,000 in cocaine. The two coconspirators were moved through the federal prison system until they ended up as cellmates at FCI–Oxford. Mr. Perez, suspecting that Calderon was a government informant, accused him of being a "snitch." According to Calderon, Mr. Perez repeatedly told him that he would

---

1. The most severe laceration measured 5.46 inches in length and eight to ten centimeters in depth; it extended from Calderon's cheek bone across the jaw to the back of the neck, cutting off part of Calderon's ear. A second cut was the same length but less deep (one-half centimeter); it ran from the front to the back of Calderon's neck, missing the internal jugular vein by approximately one to one and one-half centimeters. Calderon received other cuts across the back of his neck, on his shoulders, and on his face.

slash his head off or harm Calderon's family if he found out that Calderon was an informant.

In January 1993, convinced that Mr. Perez meant his threat, Calderon discussed his concerns with the associate warden, his case manager, and a prison counselor. He declined their offer of a transfer to a different cell or into protective custody. The day after Calderon expressed his concerns, prison officials talked to Mr. Perez. Mr. Perez told them that there was no problem. Calderon's case manager then told Mr. Perez that, if "something would happen to either of them, we, the officials, would know who to look for as the perpetrator." (Tr. 106 at II–22.)

Mr. Perez testified that, when he asked Calderon why he had reported that Mr. Perez was threatening him, Calderon pushed him and came at him with a razor blade. Mr. Perez pushed him away and picked up another razor blade; being the larger man, Mr. Perez got the better of Calderon, who was cut in the scuffle. Mr. Perez testified that he then went to the officer station and told the officer there that "You can lock me up now." When the officer asked him what he did, Mr. Perez testified that he replied, "Go take care of my cellie." (Tr. 106 at II–148.) The officer testified that Mr. Perez replied, "I took care of my cellie." (Tr. 105 at I–145.)

Calderon described the events that evening in quite different terms. Calderon testified that, as he prepared to take a shower, he bent over to get a razor from his locker. At that moment Mr. Perez came up behind him, grabbed him by the face, and cut him. According to Calderon, in the struggle, Cal-

deron grabbed Mr. Perez' right hand and saw that the weapon appeared to be a razor. He also testified that Mr. Perez called Calderon a "snitch" and said that he (Perez) would kill him. (Tr. 105 at I–116–117; tr. 106 at II–125.) The inmate across the hall heard Calderon's screams, saw the incident from the door of his cell, and later described Mr. Perez as slashing at Calderon with a razor attached to the handle of a toothbrush. When this inmate demanded to know what was going on, Mr. Perez turned from Calderon, brushed past the other inmate, and walked toward the officer station.

Mr. Perez was charged with assault with intent to commit murder, in violation of 18 U.S.C. § 113(a),[2] and with possession of a prohibited weapon described as a thin sharp instrument, in violation of 18 U.S.C. §§ 1791(a)(2) and (d)(1)(B).[3]

## B. *Proceedings in the District Court*

At the arraignment before the magistrate judge, Mr. Perez moved to proceed pro se, and his attorney moved to withdraw. After careful questioning, the magistrate judge determined that Mr. Perez had knowingly and voluntarily waived his right to counsel, and could thus represent himself. The court granted his request for standby counsel. Mr. Perez had the benefit of one standby attorney at the pretrial conference, at the evidentiary hearing, and at the later arraignment before the magistrate judge. However, Mr. Perez believed that he did not have control over the direction of his case, and asked for the withdrawal of that attorney. Counsel agreed, noting the irreconcilable breakdown in communication, trust, and

---

2. 18 U.S.C. § 113(a) provides:
 Whoever ... is guilty of an assault shall be punished as follows:
 (a) Assault with intent to commit murder, by imprisonment for not more than twenty years.

3. 18 U.S.C. § 1791, entitled **"Providing or possessing contraband in prison,"** contains the following pertinent subsections:
 (a) Offense.—Whoever—

 . . . . .

 (2) being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object;

shall be punished as provided in subsection (b) of this section.

 . . . . .

 (d) Definitions.—As used in this section—
 (1) the term "prohibited object" means—

 . . . . .

 (B) ammunition, a weapon (other than a firearm or destructive device), or an object that is designed or intended to be used as a weapon or to facilitate escape from a prison[.]

agreement. The court permitted the withdrawal and reluctantly appointed another lawyer as standby counsel. This third attorney advisor worked with the defendant at the final pretrial conference and throughout the trial.

At the magistrate judge's final pretrial conference, Mr. Perez raised an objection to the instruction on malice aforethought. He contended, through his standby counsel, that the "malice aforethought" definition inaccurately described the required intent. Mr. Perez argued that the instruction should state that the defendant "intended to kill his victim." R. 71 at 7. The magistrate judge reformulated the instruction and decided to recommend the following instruction to the district court:

> Murder is the unlawful killing of a human being with malice aforethought.
>
> Malice is the state of mind that would cause a person to act without regard to the life of another.
>
> To prove malice, the government must prove that the defendant acted consciously, with the intent to kill Faustino Calderon–Abeja. However, the government need not prove a subjective intent to kill on the part of the defendant. It would be sufficient to satisfy this element if the government proved reckless and wanton conduct on the part of the defendant which grossly deviated from a reasonable standard of care such that he was aware of the serious risk of death.
>
> In order to establish malice aforethought, the government must prove that the defendant acted willfully, with a bad or evil purpose to break the law. However, the government need not prove spite, malevolence, hatred or ill will to the victim.

Final Pretrial Conference Order, R. 71 at 6. In his order, the magistrate judge acknowledged that this instruction was not satisfactory to the defense and might not conform to the final view of the government. He wrote:

> [I]t may be that this is still not enough. Perhaps the government must prove a subjective intent to kill, and it is error to allow the jury to infer an intent to kill from the proof of the assailant's knowledge of or

indifference to the serious risk of death arising from the assault. . . .

> The most cautious approach for this court to take would be to instruct the jury that it must find that Perez intended to kill his victim and to leave it at that. This is Perez' view; perhaps it is now the government's as well, if the prosecutors have reviewed the cases and determined that they would rather not take the chance on perhaps instructing the jury incorrectly on a critical element.

*Id.* at 6–7.

When the district court sought comments concerning the instructions proffered at the final hearing prior to trial, the government objected that the "malice aforethought" instruction was confusing. However, Mr. Perez (through his standby counsel) stated that "[t]he defendant would not have any objections to the jury instruction as submitted to this Court by Magistrate Crocker." (Tr. 104 at 14.) As far as the record reveals, the matter was not pursued any further.

At trial, Mr. Perez testified that he was attacked by Calderon without provocation, and that he responded in self-defense. Mr. Perez described the incident as "brutal prison justice." Calderon's account of the attack, on the other hand, portrayed Calderon as the victim who was attacked for no reason. Numerous other witnesses testified, including the inmate who saw the struggle and the doctor who treated Calderon's injuries.

At the close of trial, the jury was given the instruction defining murder as an "unlawful killing ... with malice aforethought" that had been redrafted by the magistrate judge. The jury convicted Mr. Perez on both counts of the indictment. At sentencing, the district court determined that Mr. Perez assaulted his cellmate with malice and without provocation; that he had obstructed justice by perjuring himself at trial; and that he was a career criminal. It established that the base offense level of Mr. Perez' sentence was 28 and that his final offense level, with enhancements, was 34, with a criminal history category of VI. The court then sentenced Mr. Perez to a twenty-year term of imprisonment

on count I and a consecutive five-year term on count II.[4]

## II

## ANALYSIS

### A.

Mr. Perez contends that the jury instruction describing murder as an unlawful killing "with malice aforethought" improperly stated the intent element. He asserts that assault with intent to commit murder is a specific intent crime, one that cannot be satisfied by proof of reckless and wanton conduct. He claims that the district court therefore committed reversible error in instructing the jury that it could find the defendant guilty without finding a specific intent to kill.

The government responds that, because the defendant did not object to the instruction, any objection on appeal has been waived and therefore is subject to the "plain error" standard of *United States v. Olano*, — U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). It then points out that the jury was properly charged—first in the instruction describing the elements of the crime,[5] and then in the one discussing "malice aforethought"—that the burden is on the government to prove the requisite intent. In the government's view, the "malice aforethought" instruction simply states that intent may be established from subjective evidence. The government reminds us that this court has not required that the word "specific" be used along with "intent":

> [T]here is no "particular magic or salvation in using the word 'specific' per se. The important aspect is that the total term of

'specific intent' be defined and its applicability to the case be made clear."

*United States v. Arambasich*, 597 F.2d 609, 612 (7th Cir.1979) (citation omitted). Therefore, contends the government, there is no error, and certainly no plain error, in the instruction.

### B.

■ We turn first to the government's submission on appeal that Mr. Perez waived, through his standby counsel, any objection he might otherwise have to the instructions given the jury by the district court.

■ In *Olano*, the Supreme Court set forth, in comprehensive fashion, the appropriate analytical model for dealing with errors that were not brought to the attention of the trial court at the time and in the manner required by the applicable rules of procedure. The Court began its analysis by noting that Rule 52(b) of the Federal Rules of Criminal Procedure contemplates a single category of error that may be noticed—plain error that affects the substantial rights of the defendant. The Court continued that the first inquiry under the rule is whether there has in fact been error at all. Deviation from a rule of law, continued the Court, is error unless there has been a waiver. Waiver, the Court emphasized, is the " 'intentional relinquishment or abandonment of a known right.' " *Olano*, — U.S. at ——, 113 S.Ct. at 1777 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). As we have noted in *United States v. Lakich*, 23 F.3d 1203, 1207 (7th Cir.1994), when there has been such a knowing waiver, there is no error and the inquiry as to the effect of the deviation from the rule of law

---

4. On appeal Mr. Perez does not contest his conviction for count II, possession of a prohibited object intended as a weapon.

5. The instruction on "elements of the offense" provided:

> The defendant is charged with assault with intent to commit murder in violation of § 113(a) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

> First, the defendant *intentionally* struck or wounded Faustino Calderon–Abeja;

> Second, the defendant did so *with the intent to murder* Faustino Calderon–Abeja;

> Third, the offense occurred within the special territorial jurisdiction of the United States; and

> Fourth, the defendant was not acting in self-defense. . . .

Tr. 106 at II–208 (emphasis added).

need not be determined.[6] By contrast, mere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." "Plain," noted the Supreme Court in *Olano,* is synonymous with "clear" or "obvious." —— U.S. at ——, 113 S.Ct. at 1777. Assuming that the error is "plain," the inquiry must proceed to its last step and determine whether it affects the substantial rights of the defendant. Normally, it must have affected the outcome of the proceedings in the district court.[7] *Id.* ——, 113 S.Ct. at 1778. The defendant has the burden on this issue.

In light of these principles, we now evaluate the circumstances of this case. The government correctly points out that, although standby counsel made a very specific objection to the "malice aforethought" instruction at the final pretrial hearing before the magistrate judge, he specifically informed the district court that he had no objection to the instructions recommended by the magistrate judge. In its brief before this court, the government employs the term "waiver" in referring to this situation. However, it continues to address the matter not by urging that we hold that any error is extinguished, but by submitting that the court ought to proceed to evaluate the matter under the plain error standard. As we have just noted, *Olano* reserves such an evaluation for forfeiture, not waiver, situations.

■ The government's position is indeed ambiguous. Evaluating its submission in its entirety, we must conclude that, although the government employed the term "waiver," it intended to use the term in a less technical sense than the Supreme Court employed the term in *Olano.* Indeed, its focus on the last two steps of the *Olano* analysis, as well as its citation to cases in this circuit that deal with forfeiture rather than waiver, support that conclusion. Moreover, we are disinclined to

read the government's submission any other way for another reason. As we have noted previously, a waiver must, according to the Supreme Court in *Olano,* be premised on the " 'intentional relinquishment or abandonment of a known right.' " *Olano,* —— U.S. at ——, 113 S.Ct. at 1777 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The cold record in this case makes it difficult to determine whether that standard was met. Mr. Perez was proceeding pro se, but with the assistance of standby defense counsel. At the time that standby defense counsel objected to the "malice aforethought" instruction in the final pretrial conference conducted by the magistrate judge, that judicial officer noted that Mr. Perez was taking full responsibility for the instructions. At trial, however, the division of responsibility between Mr. Perez and his standby counsel was decidedly more ambiguous. Despite his formal pro se representation, Mr. Perez presented only the opening statement. His standby counsel examined all witnesses, raised objections, commented on the jury instructions and exhibits to be given to the jury, and presented the closing statement to the jury. Although questions were addressed to Mr. Perez, the defendant deferred to the answers of his standby counsel. Only after the verdict did Mr. Perez speak and protest that he was innocent. Given these circumstances, the government may well have determined that the more prudent course was to take the position that standby counsel's volunteering, in a rather offhanded way, that there was no objection to the instructions, in the midst of the court's consideration of the government's misgivings with the instruction, did not constitute a voluntary relinquishment of a known right. At the very least, the circumstances are sufficiently opaque to counsel against our characterizing the matter in any other way, especially in light of the government's position.

### C.

■ Having determined that we ought to consider instructional error as forfeited rath-

---

6. *Olano* notes that whether a particular right can be waived, and whether the defendant must participate in the waiver, and whether the choice must be particularly informed are all matters that depend on the right at stake. —— U.S. at ——, 113 S.Ct. at 1777.

7. The court noted that "[t]here may be a special category of forfeited errors that can be corrected regardless of their effect of the outcome." —— U.S. at ——, 113 S.Ct. at 1778.

er than waived, we now turn to the remaining steps in the analysis set forth in *Olano*. We must determine whether the giving of the instruction constituted "plain error" and, if so, whether the error affected the substantial rights of Mr. Perez.

■ We begin this inquiry by noting some of the fundamental principles that govern our review of jury instructions. The court's instructions to the jury must be correct statements of the law that are supported by the evidence. This court reviews instructions in their entirety and considers "whether the jury was misled in any way and whether it had understanding of the issues and [of] its duty to determine those issues." *United States v. Donovan*, 24 F.3d 908, 916–17 (7th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994) (quoting *United States v. Boykins*, 9 F.3d 1278, 1285 (7th Cir.1993)). We give deference to the district court's discretion concerning the specific wording of the instructions, as long as the essential elements of the offenses charged are covered by the instructions given. *United States v. Scott*, 19 F.3d 1238, 1245 (7th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994).

■ Mr. Perez' claim is that the district court erred in instructing the jury on the element of intent required by 18 U.S.C. § 113(a). This section defines federal assault offenses.[8] Because the statute itself does not provide definitions, under settled principles, the common law definitions apply. *See United States v. Stewart*, 568 F.2d 501, 504 (6th Cir.1978) (stating that statute was "intended to embrace the common law meaning" of "simple assault"). The statute covers an entire range of assaults—from those committed with the intent to commit murder (§ 113(a)) or a felony (§ 113(b)), to those committed with the intent to do bodily harm with (§ 113(c)) or without (§ 113(d)) a weapon. A later subsection proscribes simple assault (§ 113(e)). Intent is required expressly in subsections (a), (b) and (c), but not in (d), (e) and (f).[9]

■ Under § 113(a), the subsection at issue here, there must exist both the criminal conduct of assault and a specific intention to murder a human being. Whether in dicta or in the holding, other courts of appeals have uniformly required that specific intent be proven under § 113(a).[10] There is no reason

---

**8.** 18 U.S.C. § 113, "Assaults within maritime and territorial jurisdiction," provides:

Whoever ... is guilty of an assault shall be punished as follows:

(a) Assault with intent to commit murder, by imprisonment for not more than twenty years.

(b) Assault with intent to commit any felony, except murder or a felony under chapter 109A, by fine of not more than $3,000 or imprisonment for not more than ten years, or both.

(c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both.

(d) Assault by striking, beating, or wounding, by fine of not more than $500 or imprisonment for not more than six months, or both.

(e) Simple assault, by fine of not more than $300 or imprisonment for not more than three months, or both.

(f) Assault resulting in serious bodily injury, by fine of not more than $10,000 or imprisonment for not more than ten years, or both.

**9.** *See, e.g., United States v. Lewis*, 780 F.2d 1140, 1142–43 (4th Cir.1986) (holding that § 113(f) is a general, not specific, intent crime); *United States v. Guilbert*, 692 F.2d 1340, 1343–44 (11th Cir. 1982) (contrasting § 113(c) and (d) with more serious offenses under § 113 requiring specific

intent) (per curiam), *cert. denied*, 460 U.S. 1016 (1983); *United States v. Knife*, 592 F.2d 472, 483 (8th Cir.1979) (contrasting § 113(a), for which "no physical harm need result but a specific intent to commit murder must be shown," with § 113(f), for which serious bodily injury must result, but "[n]o specific intent to cause such injury need be shown"); *Stewart*, 568 F.2d at 504–05 (contrasting § 113(d) and (e) with the more serious § 113 offenses); *United States v. Martin*, 536 F.2d 535, 535–36 (2d Cir.) (comparing the intent required for the various sections of § 113), *cert. denied*, 429 U.S. 862, 97 S.Ct. 167, 50 L.Ed.2d 141 (1976).

**10.** *See, e.g., United States v. Johnson*, 994 F.2d 980, 988 (2d Cir.) (describing jury instruction indicating that willful mental state was needed for conviction), *cert. denied*, — U.S. —, 114 S.Ct. 418, 126 L.Ed.2d 364 (1993); *United States v. Salamanca*, 990 F.2d 629, 634–35 (D.C.Cir.) (discussing two ways in which a jury could have concluded that defendant formed specific intent to murder and maim the victim), *cert. denied*, — U.S. —, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993); *United States v. Cooper*, 812 F.2d 1283, 1284 (10th Cir.1987) (commenting that specific intent is required under § 113(a), but that intoxicated defendants were not capable of forming that intent); *United States v. Jones*, 681 F.2d 610, 611

for us to depart from the plain wording of the statute and from the unanimous view of the other circuits. The matter is well settled; section 113(a) requires a specific intent to commit murder.[11]

The "malice aforethought" instruction given states that the government must prove that Mr. Perez "acted consciously, with the intent to kill" Calderon. However, it also specifically states that the government need not prove Mr. Perez' "subjective intent to kill"—a showing of "reckless and wanton conduct" was sufficient. By permitting the jury to convict without determining that the defendant had the subjective intent to kill the victim, the instruction constitutes a misstatement of the law. More precisely, it constitutes a misstatement of an element of the offense.

In *United States v. Jones,* 681 F.2d 610 (9th Cir.1982), an instruction of this sort was held to constitute reversible error. Jones attacked and stabbed his prison cellmate; his defense was that he did not intend to kill his cellmate, but merely to "teach him a lesson." The court instructed the jury that the "intent to commit murder" was a requisite element for conviction, and that murder was an unlawful killing with malice aforethought. Like the instruction before us, the instruction in

*Jones* "defined malice aforethought as either the intent to take the life of another or an intent to act willfully in callous and wanton disregard of the consequences of human life." *Id.* at 611. Determining that the instruction was error, the court of appeals reversed the conviction because "the intent to act in wanton disregard of the consequences to human life is less than the specific intent to kill necessary for a conviction of assault with intent to commit murder." *Id.*

> Assault with intent to commit murder under 18 U.S.C. § 113(a) thus requires a specific intent to kill the victim, and in the special case of this offense, acting with malice by committing a reckless and wanton act without also intending to kill the victim is not sufficient for conviction.

*Id.* The court in *Jones* recognized that, despite the overwhelming evidence of the defendant's intentional conduct, it was possible, under the erroneous instruction, that the jury could have found that Jones' attack amounted to reckless and wanton conduct without a specific intent to commit murder. *Id.* at 612. *See also United States v. Salamanca,* 990 F.2d 629, 635 (D.C.Cir.) (relying on the specific intent analysis in *Jones* ), *cert.*

---

(9th Cir.1982) (requiring specific intent for conviction under § 113(a)); *United States v. Davidson,* 597 F.2d 230, 232 (10th Cir.) (in prison assault there was sufficient evidence of specific intent to commit murder), *cert. denied,* 444 U.S. 861, 100 S.Ct. 127, 62 L.Ed.2d 83 (1979); *Forsberg v. United States,* 351 F.2d 242, 245 (9th Cir.1965) (including specific intent as element of crime under § 113(a)), *cert. denied,* 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966).

In 1986 § 113(a) was amended to exclude rape as a predicate felony. However, these cases also required proof of specific attempt for the crime of assault with attempt to commit rape: *United States v. Bartlett,* 856 F.2d 1071, 1078–79 n. 9 (8th Cir.1988) (approving jury instruction that distinguished between specific and general intent); *United States v. Joe,* 831 F.2d 218, 220 (10th Cir.1987) (listing as essential elements of crime that defendant assaulted victim and that he committed assault with specific intent to commit rape), *cert. denied,* 484 U.S. 1072, 108 S.Ct. 1043, 98 L.Ed.2d 1006 (1986).

**11.** We note parenthetically that, although it is well settled that attempt to commit murder is a "specific intent" offense, it is not necessary or desirable that this terminology be employed in

the jury instruction. In *Arambasich,* 597 F.2d at 612, we noted that "[i]t is unnecessary to use the term 'specific intent'." In that decision we commented:

> [T]he labels "specific intent" and "general intent," which are emphasized in the stock instructions [the district judge] refused to give, and the distinction the instructions attempt to make between these categories of intent, are not enlightening to juries. More specific and therefore more comprehensible information is conveyed by stating the precise mental state required for the particular crime.

*Id.* Our circuit's Committee on Federal Criminal Jury Instructions recommends that courts avoid instructions that draw a distinction between "specific intent" and "general intent." *See* Federal Criminal Jury Instruction 6.02, "Specific Intent—General Intent," at 81 (West 1980) (noting that the stock "specific" and "general intent" instructions should be avoided in favor of instructions that precisely define the requisite mental state of the particular crime charged). Other circuits also discourage the use of "specific intent" jury instructions. *See* Edward J. Devitt et al., *Federal Jury Practice and Instructions* § 17.03, at 620 ff (4th ed. 1992).

*denied,* —— U.S. ——, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993).

The Second Circuit similarly rejected a "malice aforethought" instruction and overturned a conviction based on another specific intent crime, attempted murder. In *United States v. Kwong,* 14 F.3d 189 (2d Cir.1994), that court held that a jury instruction like the one before us was not harmless and required a new trial.[12] Beginning with the Supreme Court's holding that "an attempt to commit murder requires a specific intent to kill," *Braxton v. United States,* 500 U.S. 344, 351 n. \*\*, 111 S.Ct. 1854, 1859 n. \*\*, 114 L.Ed.2d 385 (1991), the appellate court concluded that specific intent was an essential element of the crime and that mere recklessness would not suffice. 14 F.3d at 194. It held that the jury instruction permitting "reckless and wanton conduct" as proof of an intent to kill created constitutional error. *Id.* at 195 ("We are unable to say that the guilty verdict rendered here was surely unattributable to that error.").

The reasoning in *Jones* and *Kwong* is fully applicable to the case before us. An intent to act in callous and wanton disregard of the consequences to human life is not the specific intent that is a prerequisite for a § 113(a) conviction. The instruction was directly contradictory to the district court's instruction on the elements of the offense and therefore left the jury with, at best, contradictory statements of the law with respect to an element of the offense. The difference between omitting a discussion of an element of the offense [13] and failing to instruct clearly a jury with respect to an element of the offense ought not be outcome determinative. As the court noted in *United States v. Kerley,* 838 F.2d 932, 938 (7th Cir.1988), the effect rather than the character of an instructional error is what is important. Here, the jury instruction eliminated the intent element necessary to a conviction under § 113(a). The effect was a failure to instruct the jury on all the elements of the offense. *See Scott,* 19 F.3d at 1245 (stating that we defer to court's instruction as long as the essential elements of the offense are covered). The error in the instruction was clear under current law; the defendant had a right to an instruction on the elements of the offense, including a precise description of the requisite specific intent element, rather than the lesser test for "wanton disregard."

We also believe that the defendant has carried the burden, imposed on him by *Olano,* of establishing that this error affected his substantial rights. *Olano,* —— U.S. at ——, 113 S.Ct. at 1178. This circuit has held that failure to instruct clearly on the elements of the offense is not always plain error. *Kerley,* 838 F.2d at 938. We have acknowledged, however, that the gravity of such an error makes reversal the usual outcome in such circumstances. *Id.* at 939. Nevertheless, we have also noted that there will be "the exceptional case" in which such a remedy is not indicated.[14] *Id.* On the record before us,

---

**12.** The instruction in *Kwong* stated:

[T]he government must prove beyond a reasonable doubt that this defendant acted with malice aforethought. Malice is a state of mind that would cause a person to act without regard to the life of another person. And to satisfy that element you must find that the defendant acted consciously with the intent to kill another person. And the requirement of proof of intent to kill another person would be satisfied if the government proved a reckless and wanton course of conduct on the part of the defendant which grossly deviated from a reasonable standard of care which would make him aware of the serious risk of death.

*Kwong,* 14 F.3d at 195.

**13.** *See United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) (explaining that, if the element of the offense is removed from purview of jury, the error cannot be harmless); *Cole v. Young,* 817 F.2d 412, 423 (7th Cir.1987) (holding that omission of an instruction on one of the elements of the offense is a due process violation).

**14.** The Ninth Circuit had such an "exceptional case" in *United States v. Hinton,* 31 F.3d 817 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 773, 130 L.Ed.2d 669 (1995). The court held that it was not plain error to instruct the jury on murder "with malice aforethought" under § 113(a). The court distinguished *Jones* on the ground that it "is not a direct precedent because there is no indication that we applied the plain error standard of review in that case." *Id.* at 821. Nevertheless, the court did not set aside the specific intent requirement of § 113. It noted that the jury's question to the judge concerning the defendant's specific intent was a clear indication that it "evidently did not misapprehend the specific intent requirement." *Id.* Finally, the court concluded that the district court did not commit plain error in giving the instruc-

the jury, following the "malice aforethought" instruction given by the district court, could have concluded that Mr. Perez was guilty of wanton and callous acts that showed no regard for Calderon's life—without having a specific intent to murder him. It could have believed that he attacked with the intention of teaching Calderon a lesson, or of maiming but not killing him. We therefore must conclude that the district court committed plain error affecting the substantial rights of the defendant by giving the "malice aforethought" instruction.

 *Olano* teaches that the appellate court, acting under Rule 52(b), has the discretion, although not the duty, to afford relief when the requirements of that Rule have been fulfilled. *Olano,* —— U.S. at ——, 113 S.Ct. at 1778. *Olano* further teaches that it is appropriate to exercise that discretion in favor of granting relief when the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at ——, 113 S.Ct. at 1779. The instruction at issue here could well have had an unfair prejudicial impact on the jury's deliberations. *See United States v. Young,* 470 U.S. 1, 16–17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985) (requiring appellate court to find that the error had a prejudicial impact on jury); *United States v. Caputo,* 978 F.2d 972, 974 (7th Cir.1992) (stating that a "harmless error is one that could not have affected the jury, a plain error one that not only could have done so but probably did so").

In this case, because the "murder with malice aforethought" instruction did not require proof of specific intent, but rather stated that a "subjective intent to kill" need not be proven, and that reckless and wanton conduct would suffice, the error affects the integrity of the proceeding itself. *Cf. United States v. Chaplin,* 25 F.3d 1373, 1376 n. 2 (7th Cir.1994) (invoking plain error doctrine "because our refusal to do so would seriously affect the fairness of the criminal proceedings"); *United States v. Jones,* 21 F.3d 165, 173 (7th Cir.1994) (concluding that the erroneous jury instruction seriously affected the fairness of the judicial proceedings because

there was a clear possibility that the defendant could be found not guilty of the charge). Accordingly, we hold that the jury instruction was reversible plain error. *See also United States v. Wilkinson,* 26 F.3d 623, 625 (6th Cir.1994) (stating that failure to define accurately the elements of an offense may constitute plain error).

### Conclusion

For the foregoing reasons, the district court's conviction of Mr. Perez under 18 U.S.C. § 113(a) is reversed and remanded for another trial. This remand requires that we also vacate the sentence. Therefore we do not reach the sentencing issue raised.

REVERSED AND REMANDED.

---

tion because three other clarifying instructions on specific intent were given as well. *Id.* at 822.

Here, by contrast, we have conflicting instructions and nothing more.