In the
# United States Court of Appeals
## For the Seventh Circuit

No. 18-1343

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BLAIR COOK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:17-cr-00048 — **James D. Peterson**, *Chief Judge.*

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before FLAUM, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury convicted Blair Cook of being an unlawful user of a controlled substance (marijuana) in possession of a firearm and ammunition. *See* 18 U.S.C. §§ 922(g)(3) (proscribing possession of firearm by unlawful user of controlled substance), 924(a)(2) (specifying penalties for one who "knowingly" violates section 922(g)). Cook appealed

his conviction, contending that the statute underlying his
conviction is facially vague, that it improperly limits his Second
Amendment right to possess a firearm, and that the district
court did not properly instruct the jury as to who constitutes an
unlawful user of a controlled substance. We affirmed Cook's
conviction. *United States v. Cook*, 914 F.3d 545 (7th Cir. 2019).
The Supreme Court subsequently held in *Rehaif v. United States*,
139 S. Ct. 2191, 2194, 2200 (2019), that the knowledge element
of section 924(a)(2) requires the government to show that the
defendant knew not only that he possessed a firearm, but that
he belonged to the relevant category of persons barred from
possessing a firearm. Consistent with the prior case law of this
court, the superseding indictment in this case did not allege,
nor the jury instructions advise the jury that it must find, that
Cook knew he was an unlawful user of a controlled substance.
Cook's petition for a writ of certiorari was pending at the time
that Court was considering *Rehaif*, and Cook had suggested
that if the Court in *Rehaif* expanded the knowledge requirement
of section 924(a)(2) to include knowledge of one's status, the
Court ought to remand his case for further proceedings.
Petition for Writ of Certiorari at 25–26, *Cook v. United States*,
No. 18-9707 (U.S. June 12, 2019).[1] The Court subsequently
granted Cook's petition, vacated our decision sustaining his
conviction, and remanded for reconsideration in light of *Rehaif*,
as Cook had asked it to do. *Cook v. United States*, 140 S. Ct. 41
(Oct. 7, 2019). Upon reconsideration, we now reincorporate our
previous decision, with minor modifications, rejecting Cook's

---

[1]   Available at https://www.supremecourt.gov/search.aspx?filename=/
docket/docketfiles/html/public/18-9707.html (visited July 28, 2020)

vagueness and Second Amendment challenges to section 922(g)(3) along with his objection to the jury instruction on who constitutes an unlawful user of a controlled substance. But in light of *Rehaif*, we conclude that Cook is entitled to a new trial.

## I.

On May 25, 2017, officers of the Madison, Wisconsin police department conducted a traffic stop of the car that Cook was driving. When officers approached the car and spoke with Cook, they noticed a strong odor of marijuana emanating from the car. Apart from the possibility that Cook was driving under the influence of marijuana, Cook was also driving on a suspended license and with a license plate missing from his vehicle, so the officers decided to detain him and ordered him to step out of the vehicle. Officer Matthew Wentzel removed a loaded, .40-caliber Glock Model 23 pistol from a holster under Cook's shoulder. The gun had an extended capacity magazine with a total of 19 bullets within it when Cook was stopped. Cook was transported to the police station for further questioning. During a recorded interview at the station, Cook acknowledged to Wentzel that "I've been smoking weed since I was like 14" (a period of nearly ten years), that he did so because "it really mellows me out," and that he had smoked two "blunts" earlier that day. R. 22-1 at 2–3.[2] As Judge Peterson would later note in denying Cook's motion for a new trial, "The way Cook phrased his statement suggests not merely that he smoked

---

[2]  "Blunt" is a street term for a cigar from which the tobacco has been removed and replaced with marijuana. R. 56 at 22.

weed the first time when he was 14, but that it was a regular activity since then." R. 73 at 2. On prodding from the police, Cook ultimately produced a packet from his groin area containing a half ounce of marijuana.

Cook had purchased the firearm from Max Creek Outdoors in Oregon, Wisconsin on April 2, 2017. At the time of the purchase, he was required to complete a Firearms Transaction Record (Form 4473) promulgated by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). On that form, Cook answered "No" to the question, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" Directly under that question the reader of the form was admonished, "Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medical or recreational purposes in the state where you reside." Gov. Trial Ex. No. 1.

A grand jury subsequently charged Cook with two offenses: knowingly possessing in or affecting commerce a firearm and ammunition as an "unlawful user" of marijuana, in violation of sections 922(g)(3) and 924(a)(2), and knowingly making a false statement (that he was not an unlawful user of marijuana) on the ATF form in connection with his purchase of a firearm and ammunition, in violation of section 924(a)(1)(A). R. 7.

Cook moved to dismiss both counts of the indictment on the ground that the term "unlawful user" of a controlled substance found in section 922(g)(3) is unconstitutionally vague. The district court denied the motion. R. 21 at 2–3.

The district court subsequently gave the following instruction to the jury as to who constitutes an "unlawful user" of marijuana:

> The defendant was an **unlawful user of marijuana** if he used marijuana on a regular and ongoing basis for a period of time that began before and continued through the date of the charged offense. The government is not required to prove that the defendant was under the influence of marijuana when he filled out the Firearms Transaction Record or when he possessed the firearm. The government is not required to prove that the defendant used marijuana on any particular day, or within a certain number of days of when he committed the charged offenses.

R. 44 at 8; R. 56 at 70–71 (emphasis in original). The defense rejected the government's offer to include an additional sentence in this instruction advising the jury that a one-time use of marijuana is insufficient to render the defendant an "unlawful user" within the meaning of section 922(g)(3). R. 87 at 17.

Following a one-day trial, a jury convicted Cook on the possession charge but was unable to reach a verdict on the false statement charge, which the district court dismissed without prejudice. R. 46, 53. The district court denied Cook's Rule 33 motions for a new trial (R. 73) and ordered Cook to serve a four-year term of probation in lieu of any term of imprisonment (R. 76).

**II.**

We begin our reconsideration with the charges Cook raised prior to the Supreme Court's decision in *Rehaif*. Although we conclude in section III below that *Rehaif* entitles Cook to a new trial, these issues are not moot and our analysis remains relevant to the proceedings on remand.

Section 922(g)(3) of the Criminal Code provides in relevant part that "[i]t shall be unlawful for any person … who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)) … to … possess in or affecting commerce, any firearm or ammunition … ." Marijuana is a Schedule I controlled substance, *see* 21 U.S.C. § 812(c)(10), and because the Glock pistol Cook purchased from Max Creek Outdoors had previously traveled in interstate commerce (it was manufactured in Smyrna, Georgia), section 922(g)(3) forbade Cook's possession of the gun at the time of the May 2017 traffic stop provided that he qualified as an "unlawful user" of marijuana, which the jury necessarily found that he did. Section 924(a)(2) in turn provides that anyone who "knowingly" violates section 922(g) shall be imprisoned for up to 10 years.[3]

Cook challenges his conviction pursuant to section 922(g)(3) on three grounds: (1) the statute is facially vague as to who constitutes an "unlawful user" of a controlled substance; (2) the statute violates his Second Amendment right to possess a

---

[3] Cook possessed (and was charged with possessing) ammunition as well as a firearm, but for the sake of simplicity, we shall refer only to the firearm.

firearm; and (3) the jury instruction defining "unlawful user" was inadequate. For the reasons that follow, we find none of these arguments to be persuasive.

A.  Facial vagueness challenge to section 922(g)(3)

Cook contends that section 922(g)(3) is vague on its face, such that his conviction violates the Fifth Amendment's due process clause. The void-for-vagueness doctrine requires that a criminal statute define an offense with sufficient clarity that an ordinary person has fair notice of what conduct is prohibited and so as to avoid arbitrary and discriminatory enforcement. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 402–03, 130 S. Ct. 2896, 2927–28 (2010); *United States v. Sylla*, 790 F.3d 772, 774–75 (7th Cir. 2015). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306, 128 S. Ct. 1830, 1846 (2008).

The general practice, outside of the First Amendment context,[4] has been to consider the purported vagueness of a statute in light of the facts of the particular case—*i.e.*, as applied—rather than in the abstract. *See, e.g.*, *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 1857–58 (1988); *United States v. Johnson*, 875 F.3d 360, 370 (7th Cir. 2017). This

---

[4]  When a statute implicates activities protected by the First Amendment, there is a special concern that free speech and expression not be chilled. *See Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 93 S. Ct. 2908, 2915–16 (1973).

means, of course, that a litigant challenging the statute ordinarily must show that it is vague as applied to him; and if the statute undoubtedly applies to his conduct, he will not be heard to argue that the statute is vague as to one or more hypothetical scenarios. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19, 130 S. Ct. 2705, 2718–19 (2010) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 1191 (1982)); *Broadrick v. Oklahoma, supra* n.4., 413 U.S. at 610–11, 93 S. Ct. at 2915 (collecting cases).

Nonetheless, the Supreme Court has on a number of occasions entertained facial challenges to criminal statutes that do not implicate First Amendment concerns. *See, e.g., Skilling*, 561 U.S. at 402–14, 130 S. Ct. at 2927–34 (honest services fraud); *City of Chicago v. Morales*, 527 U.S. 41, 52–64, 119 S. Ct. 1849, 1857–63 (1999) (loitering by gang members in public places); *Lanzetta v. New Jersey*, 306 U.S. 451, 453–58, 59 S. Ct. 618, 619–21 (1939) (gang participation); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89–93, 41 S. Ct. 298, 300–01 (1921) (price gouging). As we noted in *United States v. Jones*, 689 F.3d 696 (7th Cir. 2012), *abrogated on other grounds, Johnson v. United States*, 135 S. Ct. 2551 (2015), the common thread uniting these cases with facial challenges in the First Amendment context appears to be a concern (or at least a colorable contention) that the challenged statute "simply has no core" and lacks "any ascertainable standard for inclusion and exclusion, "*id.* at 703 (quoting *Smith v. Goguen*, 415 U.S. 566, 578, 94 S. Ct. 1242, 1249 (1974)). Such a standardless statute poses a trap for the person acting in good faith, who is given no guidepost by which he can divine what sort of conduct is prohibited. *See Colautti v. Franklin*, 439 U.S. 379, 395–96, 99 S. Ct. 675, 685–86 (1979),

*overruled in part on other grounds*, *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 109 S. Ct. 3040 (1989). The concern is heightened when the statute contains no *mens rea* requirement, *Colautti*, 439 U.S. at 395, 99 S. Ct. at 685–86, and the uncertainty as to exactly what is proscribed "threatens to inhibit the exercise of constitutionally protected rights," *id.* at 391, 99 S. Ct. at 683. *See also Morales*, 527 U.S. at 55, 119 S. Ct. at 1858.

The statutory prohibition at issue here does not present such concerns. True enough, section 922(g)(3) does implicate Cook's Second Amendment right to possess a gun. But the prohibition is not a strict liability offense requiring no *mens rea*, as in *Colautti*. By virtue of the separate penalties provision found in section 924(a)(2), a violation of section 922(g)(3) must be knowing – that is, the defendant must have knowledge of the facts that constitute the offense. *E.g.*, *Dixon v. United States*, 548 U.S. 1, 5, 126 S. Ct. 2437, 2441 (2006) ("unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense") (quoting *Bryan v. United States*, 524 U.S. 184, 193, 118 S. Ct. 1939, 1946 (1998)); *see Humanitarian Law Project*, 561 U.S. at 21, 130 S. Ct. at 2720 ("the knowledge requirement of the statute further reduces any potential for vagueness, as we have held with respect to other statutes containing a similar require-ment") (collecting cases); *United States v. Johnson*, 911 F.3d 849, 853 (7th Cir. 2018) (word "knowingly" cures any potential vagueness in challenged condition of supervised release) (citing *Screws v. United States*, 325 U.S. 91, 102, 65 S. Ct. 1031, 1036 (1945)). And as *Rehaif* has now clarified, that knowledge requirement extends to the particular status that renders a defendant's possession of a firearm unlawful. 139 S. Ct. at 2194,

2200. Moreover, there is, as our decision in *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010) (per curiam) makes clear, a readily appreciable core of conduct prohibited by the particular subsection of 922(g) at issue here.

*Yancey* construes the term "unlawful user," as used in section 922(g)(3), to mean one who regularly or habitually ingests a controlled substance in a manner other than as prescribed by a physician. *Id.* at 682. Our opinion adds that such use must be contemporaneous with the defendant's possession of a gun. *Id.* at 687 (collecting cases); *see also United States v. Grap*, 403 F.3d 439, 446 (7th Cir. 2005) (adopting same contemporaneity requirement for purposes of U.S.S.G. § 2K2.1(a)(6), which specifies the base offense level for "prohibited person" convicted of firearms offense) (collecting cases). *Yancey* set forth this interpretation of section 922(g)(3) in the course of rejecting a Second Amendment challenge to the statute. Noting the well-established link between chronic drug use and violence, we concluded that section 922(g)(3)'s ban on gun possession by those who regularly engage in illegal drug use was substantially related to the important government interest in preventing violent crime. 621 F.3d at 685–86. We must take into account *Yancey*'s gloss on the statute in evaluating Cook's vagueness claim. *See Skilling*, 561 U.S. at 405, 130 S. Ct. at 2929 ("It has long been our practice, … before striking a federal statute as vague, to consider whether the prescription is amenable to a limiting construction."); *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 995–96 (7th Cir. 2002); *Waldron v. McAtee*, 723 F.2d 1348, 1354 (7th Cir. 1983).

Cook is thus not in a position to claim that the statute is so indefinite as to inhibit the legitimate exercise of Second Amendment rights. Whatever doubt there might be at the margins as to conduct potentially reached by section 922(g)(3), there can be no doubt as to the core of conduct that the statute (as construed by *Yancey*) proscribes: the possession of a firearm by an individual engaged in the regular, non-prescribed use of a controlled substance. Indeed, it would appear that Cook's conduct—possession of a firearm in the midst of a nearly ten-year period of marijuana use—epitomizes that core, which may explain why Cook is so keen to challenge the statute on its face rather than as applied.

Cook nonetheless suggests that the Supreme Court's recent decision in *Johnson* authorizes his facial vagueness challenge, regardless of whether the statute is vague as applied to his particular conduct. *Johnson* declared the (now defunct) residual clause of the Armed Career Criminal Act ("ACCA") to be impermissibly vague without requiring the defendant to first show that the clause was vague as applied to him. 135 S. Ct. at 2563. The ACCA specifies an enhanced sentence of 15 years to life for one convicted of a firearms offense if the defendant has three or more prior convictions for either a "serious drug offense" or a "violent felony." 18 U.S.C. § 924(e)(1). As relevant here, the statute defines "violent felony" to mean a crime punishable by a year or more in prison which "is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]" § 924(e)(2)(B)(ii) (emphasis ours). The Court previously had construed section 924(e)(2)(B)(ii) to require a sentencing court to employ a categorical approach focusing on

the generic version of an offense (that is, what the elements of the offense minimally require in the abstract), rather than the defendant's actual conduct, in deciding whether his prior conviction qualified as a violent felony. *See Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143, 2160 (1990). In view of the categorical inquiry mandated by *Taylor*, two aspects of the residual clause we have italicized led the Supreme Court in *Johnson* to conclude that this clause was impermissibly vague: (1) after postulating the archetypal version of the crime, one had to decide how much risk of physical injury was posed by that idealized version of the offense; and (2) one also had to consider how much risk of injury was required to render an offense violent as compared with the offenses expressly identified in the statute (burglary, arson, extortion, and offenses involving the use of explosives). 135 S. Ct. at 2557–58. Both inquiries were plagued by uncertainty, as evidenced by both the Court's own demonstrated inability in a series of prior residual clause cases to articulate a "principled and objective standard" for identifying crimes that present a serious risk of physical injury, *id.* at 2558, as well as the "numerous splits among the lower federal courts," where the clause had proved "nearly impossible to apply consistently," *id.* at 2560 (quoting *Chambers v. United States*, 555 U.S. 122, 133, 129 S. Ct. 687, 694 (2009) (Alito, J., concurring in judgment)). "Nine years' experience trying to derive meaning from the residual clause convinces us that we have embarked upon a failed enterprise," the Court concluded. "Each of the uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a task for us which at best could be only guesswork.'" *Id.* (quoting

*United States v. Evans*, 333 U.S. 483, 495, 68 S. Ct. 634, 641 (1948)).

In declaring the residual clause to violate the due process clause, the Court expressly rejected the government's contention that an otherwise vague statute is constitutional so long as "there is some conduct that clearly falls within the provision's grasp." *Id.* at 2561. While acknowledging that statements in some of its opinions could be read to support such a rule, the Court emphasized that its prior holdings squarely contradicted such a practice. *Id.* at 2560–61. Simply because it is possible to envision some factual scenarios that would violate an ambiguously-worded statute is not enough to rescue that statute from a vagueness challenge, the Court made clear. *Id.* at 2561.

The Court was also at pains to emphasize, however, that simply because a criminal statute uses qualitative language to articulate a liability standard does not mean that the statute is impermissibly vague, especially when the statute under scrutiny calls upon the court to apply that standard to a concrete set of facts. *Id.* at 2561; *see also id.* at 2558.

> As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct; "the law is full of instances where a man's fate depends on his estimating rightly … some matter of degree," *Nash v. United States*, 229 U.S. 373, 377, 33 S. Ct. 780 (1913). The residual clause, however, requires application of the "serious potential risk" standard to an idealized ordinary

case of the crime. Because "the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect," this abstract inquiry offers significantly less predictability than one "[t]hat deals with the actual, not with an imaginary condition other than the facts." *International Harvester Co. of America v. Kentucky*, 234 U.S. 216, 223, 34 S. Ct. 853 (1914).

135 S. Ct. at 2561.

It is not clear how much *Johnson*—and the Court's follow-on decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which invalidated similar language in the Immigration and Nationality Act—actually expand the universe of litigants who may mount a facial challenge to a statute they believe is vague. Not surprisingly, Cook contends that *Johnson* permits any defendant who can postulate doubts as to what particular conduct a criminal statute does or does not reach to pursue a facial challenge to that statute, without having to show that there is any real question as to whether his own conduct is proscribed. It is true that *Johnson* puts to rest the notion—found in any number of pre-*Johnson* cases—that a litigant must show that the statute in question is vague in *all* of its applications in order to successfully mount a facial challenge.[5] 135 S. Ct. at 2561. And,

---

[5] *See, e.g., United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); *Johnson*, 135 S. Ct. at 2574, 2581 (Alito, J., dissenting); *Hegwood*

(continued...)

as we have mentioned, *Johnson* likewise rejects the notion that simply because one can point to *some* conduct that the statute undoubtedly would reach is alone sufficient to save it from a vagueness challenge. *Id.* So Cook has those aspects of *Johnson* going for him. But so much of the Court's analysis in *Johnson* deals with a statute that is in key respects *sui generis*. In particular, it was the categorical approach called for by the ACCA's residual clause—requiring courts to look not at the actual conduct underlying the defendant's prior conviction but rather at the archetypal version of the offense, and then to consider whether the risk of injury posed by that version was sufficient to render the crime violent—which the court found to be particularly vexing. *Id.* at 2557–58. Assessing the degree of risk posed by an idealized "typical" version of an offense was significantly different, as the Court emphasized, from looking at the risks posed by a set of actual, concrete facts. *Id.* at 2558; *see also Dimaya*, 138 S. Ct. at 1214–16; *Copeland v. Vance*, 893 F.3d 101, 110–11 n.2 (2d Cir. 2018) (noting unique context of *Johnson*).

Cook's appeal, by contrast, presents a much more routine vagueness challenge that highlights some imprecision in the statutory language and posits uncertainty as to whether the statute might apply to certain hypothetical facts. But section 922(g)(3) does not call for the court to engage in any abstract analysis; it calls on the court to apply the statutory prohibition

---

[5] (...continued)
*v. City of Eu Claire*, 676 F.3d 600, 604 (7th Cir. 2012); *Sherman ex rel. Sherman v. Koch*, 623 F.3d 501, 520 (7th Cir. 2010); *Schor v. City of Chicago*, 576 F.3d 775, 781 (7th Cir. 2009).

to a defendant's real-world conduct. *See United States v. Davis*, 139 S. Ct. 2319, 2327 (2019) ("a case-specific approach would avoid the vagueness problems that doomed the statutes in *Johnson* and *Dimaya*"). Moreover, there is, as we have discussed, a readily appreciable core of conduct that the statute reaches: If one regularly uses marijuana or another controlled substance other than as directed by a physician, he may not possess a firearm so long as the use persists. Consequently, citizens who wish to exercise their Second Amendment rights and law enforcement officials alike have reasonable notice of what is prohibited. This is not a "hopelessly indeterminate" statute (Cook Br. 13) that leaves everyone to guess what conduct is legal and what conduct is proscribed.[6] The statute, as construed by *Yancey*, does incorporate a qualitative liability standard, and one can posit, as Cook does, hypothetical scenarios which present close questions as to whether an

---

[6]    We recognize that a liability standard turning on the regularity of a particular activity can in some instances present a vagueness problem. *See Whatley v. Zatecky*, 833 F.3d 762 (7th Cir. 2016) (finding statute impermissibly vague where it specified enhanced sentence for individual possessing controlled substance within 1000 feet of "youth program center," defined as any building that provides youth-oriented programs or services "on a regular basis"). In contrast to *Whatley*, the statute at issue here is not a strict-liability provision, and one's liability under section 922(g)(3) turns on the regularity of one's own conduct rather than the activity occurring in a building that may exhibit no indicia of what programs and services are provided therein and how often. One who uses a controlled substance necessarily knows how often he does so. *See United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001) ("Purdy's [regular, years-long] drug use … was sufficient to put him on notice that he fell within the statutory definition of 'unlawful [drug] user.'").

individual's use of a controlled substance is generally unlawful, whether it qualifies as regular and ongoing under *Yancey*, and/or whether that use is sufficiently contemporaneous with his or her possession of a firearm. But in contrast with the ACCA's residual clause, there is no judicial history of courts struggling to appreciate what particular conduct Congress meant to reach with section 922(g)(3) or to apply the statutory terms to varying sets of facts. The uniform rejection of as-applied vagueness challenges to section 922(g)(3) by itself suggests that it is not anything like the sort of problematic statute the Court confronted in *Johnson*. *See United States v. Bramer*, 832 F.3d 908, 909–10 (8th Cir. 2016) (per curiam); *United States v. Edwards*, 540 F.3d 1156, 1162 (10th Cir. 2008); *United States v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005); *United States v. Purdy*, *supra* n.6, 264 F.3d at 812–13. And simply because it may sometimes be difficult to determine if an individual's drug use meets section 922(g)(3)'s standard for liability does not signify that the statute is impermissibly vague, given that there is no doubt as to the essence of what the statute forbids: the possession of a firearm by one who is engaged in the regular and ongoing use of a controlled substance other than as prescribed by a doctor. *See Williams, supra*, 553 U.S. at 306, 128 S. Ct. at 1846.

For these reasons, we are not convinced that Cook is entitled to mount a facial vagueness challenge to section 922(g)(3). *Johnson* did not alter the general rule that a defendant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge. *United States v. Westbrooks*, 858 F.3d 317, 325–26 (5th Cir. 2017) (collecting cases), *cert. granted & judgment vacated on other grounds*, 138 S.

Ct. 1323 (2018). Cook's conduct, if anything, undoubtedly falls within the obvious core of conduct proscribed by the statute. Per his statement at the police station, he had been using marijuana for almost ten years and he had smoked two blunts on the day of his arrest; and the police officers who stopped his vehicle and took him into custody noted a strong odor of marijuana emanating from the interior and that Cook himself reeked of the substance. These facts no doubt explain why Cook has declined to pursue an as-applied vagueness challenge to section 922(g)(3): it would surely fail. *See United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002) (addressing facts similar to those presented here) ("While we do not doubt that the exact reach of the statute is not easy to define, we agree with the government that this is not a borderline case. … Given the evidence, Jackson violated the plain meaning of the statute.").

Cook's attempt to challenge section 922(g)(3) as facially vague fails for all of the reasons we have discussed, and because he asserts no as-applied challenge to the statute, we reject his contention that the statute is inconsistent with his due process rights.

B.  Second Amendment

Cook agrees that *Yancey* forecloses this challenge to section 922(g)(3). *Yancey*, as noted, held that there was a substantial relationship between the government's legitimate interest in preventing violent crime and the statute's ban on gun possession by unlawful drug users. 621 F.3d at 683–87. Although Cook asserts that *Yancey* was wrongly decided, he offers us no real reason to reconsider our precedent on this point. As the

law is settled in this circuit, we reject his Second Amendment objection to the statute.

C.  Jury Instruction

Cook argues finally that the district court did not properly instruct the jury as to the elements of his offense. As we noted in our summary of the proceedings below, the court advised the jury that "[t]he defendant was an unlawful user of marijuana if he used marijuana on a regular and ongoing basis for a period of time that began before and continued through the date of the offense." R. 44 at 8; R. 56 at 70–71 (emphasis omitted). The court added that Cook need not have been under the influence of marijuana when he possessed a firearm, nor was the government required to prove that he used marijuana on any particular date or within a specified number of days of the offense. (Recall that Cook had rejected the government's offer to add language that use of marijuana on a single occasion was insufficient to establish unlawful drug use.) Cook contends that the instruction as given was erroneous because (a) it was not grounded in the language of section 922(g)(3); (b) it was not consistent with *Yancey*'s holding as to who constitutes an unlawful drug user; (c) the instruction was internally inconsistent; and (d) it foreclosed the defense from urging the jurors to use their own understanding of "unlawful user" in assessing Cook's conduct. None of these arguments is persuasive.

The instruction was grounded in the language of the statute in that it endeavored, consistent with the case law regarding section 922(g)(3), to define for the jury who constitutes an unlawful drug user. The statute itself does not define "unlawful user." As discussed, this court in *Yancey* concluded that an

unlawful drug user is one who regularly uses a controlled substance, other than as prescribed by a physician, contemporaneously with possessing a firearm. 621 F.3d at 682, 687. In doing so, we acted in accord with other circuits which have concluded that the statute's reach is limited by two key requirements: (1) regularity of drug use (2) that is sufficiently contemporaneous with the possession of a firearm. *See id.* (collecting cases). That these are limits imposed on the offense by the judiciary rather than the face of the statute does not render them invalid. *See United States v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 1225 (1997) ("clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute") (collecting cases); *Skilling, supra*, 561 U.S. at 405–06, 130 S. Ct. at 2929–30 (before striking down a federal statute as vague courts will first consider if it is subject to a limiting construction that avoids vagueness); *id.* at 409 n.43, 130 S. Ct. at 2931 n.43 ("cases 'paring down' federal statutes to avoid constitutional shoals are legion"). The district court appropriately looked to *Yancey*'s gloss on the statute in defining "unlawful user" for the jury.

Nor was the instruction inconsistent with *Yancey*. Cook suggests that *Yancey* defined "unlawful user" of drugs to mean either one who is addicted to controlled substances or one who has simply used them within the past year, and that the reference to "regular and ongoing" drug use in the district court's instruction is both broader than addiction and narrower than use within the past year. But Cook's reading of *Yancey* is not a faithful account of the court's opinion. The opinion makes clear that section 922(g)(3) requires *regular* or *habitual* drug use, 621 F.3d at 682, that is contemporaneous with the possession

of a firearm, *id.* at 687. Nowhere in our decision did we suggest that a single or occasional, irregular use of a controlled substance within a year of the gun possession was sufficient to meet these criteria. Nor did we indicate that regular or habitual use necessarily equates with addiction. The instruction given here was fully consistent with *Yancey*'s requirements: the term "regular" connotes a pattern of repeated drug use (be it volitional *or* as the result of an addiction), and "ongoing" connotes the requisite temporal nexus with possession of the gun.

The instruction was also internally consistent. Cook's contention to the contrary focuses on the fact that the instruction advised the jury, on the one hand, that his marijuana use must have "beg[u]n before and continued through the date of the charged offense" but, on the other hand, that he need not have "used marijuana on any particular day, or within a certain number of days of when he committed the charged offense." R. 44 at 8; R. 56 at 71. These portions of the instruction were not at odds with one another. Consistent with *Yancey*'s requirement that the defendant's drug use be contemporaneous with his possession of a firearm, the court appropriately advised the jury that Cook's marijuana use must have been "ongoing" at the time he was discovered in possession of a gun. But the requirement that the drug use and firearm possession be contemporaneous does not literally mean that the defendant must have been ingesting (or under the influence of) a controlled substance at the same time as he possessed the gun. The statute, after all, prohibits firearm possession by a drug *user*, not simply possession during drug *use*. So long as the defendant was still engaged in the regular use of a drug at the time

of his firearm possession, it is not necessary to show that he used the drug on the day of his firearm possession, the day before, or within any particular number of days of the possession. Thus, a person who routinely uses marijuana on weekends may violate section 922(g)(3) by possessing a firearm on a Tuesday or Wednesday, because his possession of the gun is contemporaneous with his ongoing pattern of drug use. The instruction appropriately and coherently advised the jury on these points.

Finally, we are no more persuaded than the district judge was that the instruction should have left it to the jurors to consult their own collective sense of who constitutes an "unlawful user" of marijuana. *Yancey* establishes the relevant parameters on this point, and the district court was required to convey those parameters to the jury to guide its decision-making, which Judge Peterson did admirably.

That said, our holding should not be construed to foreclose alternate versions of the "unlawful user" instruction. The Sixth and Eighth Circuits, for example, have promulgated instructions with slightly different language. *See* MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE EIGHTH CIRCUIT § 6.18.922B, at 291–94 (2017 ed.); *United States v. Burchard*, 580 F.3d 341, 352 (6th Cir. 2009). Although the arguments in this court and in the court below reflect some anticipation that we might settle upon our own preferred version of the instruction in this appeal, we respectfully decline to do so. As the foregoing discussion makes clear, we find no fault with the particular instruction that Judge Peterson gave to the jury, and we need not go farther than that to resolve Cook's appeal. The task of drafting a model instruction, we believe, is

better left to our Circuit's Pattern Criminal Jury Instruction Committee, which has a membership that includes practitioners and academics as well as judges and which can solicit and incorporate comments on any proposed instruction from the bar at large. We have invited the Committee to consider a pattern instruction for a section 922(g)(3) charge, including but not limited to the issue of who constitutes an "unlawful user" of a controlled substance for purposes of this statute.

### III.

In compliance with the Supreme Court's mandate, we must now consider whether the Court's decision in *Rehaif* entitles Cook to a new trial. At our request, the parties have filed supplemental briefs on this question, which we have found to be quite helpful.

As we noted, *Rehaif* held that a charge under sections 922(g) and 924(a)(2) requires proof that a defendant knew that he possessed the status which rendered it unlawful for him to possess a firearm. 139 S. Ct. at 2194, 2200. "This decision upset not only the law of this circuit but the unanimous conclusion of all the courts of appeals." *United States v. Payne*, 964 F.3d 652, 655 (7th Cir. 2020) (citing *United States v. Williams*, 946 F.3d 968, 970 (7th Cir. 2020)). Post-*Rehaif*, we have clarified that the government need not show that the defendant knew his status prohibited him from possessing a firearm, but simply that he held the status. *United States v. Maez*, 960 F.3d 949, 954–55 (7th Cir. 2020); *see also United States v. Triggs*, 963 F.3d 710, 714–15 (7th Cir. 2020). So in this case, Cook's knowledge that he was an unlawful user of a controlled substance was an element of the offense.

The issue resolved in *Rehaif* was not one that Cook had pursued in the district court or in his appeal to this court, but rather was raised for the first time in Cook's *certiorari* petition; the parties therefore agree it is subject to plain error review. Fed. R. Crim. P. 52(b); *see, e.g., Triggs*, 963 F.3d at 712. In order to establish plain error rendering him eligible for relief, Cook bears the burden of showing: (1) an error that was not affirmatively waived (2) that, in retrospect, is clear or obvious, and (3) which affected his substantial rights. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016); *United States v. Marcus*, 560 U.S. 258, 262, 130 S. Ct. 2159, 2164 (2010); *United States v. Olano*, 507 U.S. 725, 732–35, 113 S. Ct. 1770, 1776–78 (1993). Furthermore, relief under Rule 52(b) is discretionary, and should be granted only when the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at 732, 735–37, 113 S. Ct. at 1776, 1778–79; *see also Molina-Martinez*, 136 S. Ct. at 1343; *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906–07 (2018); *Marcus*, 560 U.S. at 262, 130 S. Ct. at 2164.

Consistent with this circuit's pre-*Rehaif* cases, the superseding indictment omitted any allegation that Cook knew he was an unlawful user of marijuana, and the jury that convicted Cook was not instructed that the government was required to prove Cook's knowledge in this regard. *See, e.g., United States v. Lane*, 267 F.3d 715, 720 (7th Cir. 2001) (sole scienter requirement imposed by section 924(a)(1) is that defendant's possession of firearm was knowing). As a consequence of these omissions, the government was relieved of the burden to establish what *Rehaif* makes clear is an essential element of the offense.

The parties agree that, in view of *Rehaif*, it was error for the jury not to be advised that in order to convict Cook it must find that he knew he was an unlawful user of marijuana.[7] The parties also agree that, in retrospect, the error is obvious. Where they part ways is on whether the error implicated Cook's substantial rights. An error affects a defendant's substantial rights when there is a reasonable probability that, had the error not occurred, the outcome of the proceeding would have been different. *Molina-Martinez*, 136 S. Ct. at 1343; *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 81–82, 124 S. Ct. 2333, 2336, 2339 (2004); *Olano*, 507 U.S. at 734–35, 113 S. Ct. at 1777–78; *see also United States v. Carson*, 870 F.3d 584, 602 (7th Cir. 2017) (even instructional errors of constitutional dimension are subject to review for prejudice) (citing *United States v. Cardena*, 842 F.3d 959, 998 (7th Cir. 2016)). This is the essentially same standard that courts employ to assess whether the ineffective assistance of counsel has prejudiced a defendant, *see Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984), and to determine whether favorable evidence that the government has withheld from the defense in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1184 (1963), was material to the defendant's guilt or punishment, *see Cone v. Bell*, 556 U.S. 449, 469–70, 129 S. Ct. 1769, 1783 (2009) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S. Ct. 1555, 1566 (1995)). *Dominguez Benitez*, 542 U.S. at 81–82, 124 S. Ct. at 2339.

---

[7] We shall hereafter treat the omissions in the indictment and the jury instructions as a single error comprising a failure to inform the jury of an essential element of the offense.

In order to meet this standard, Cook does not have to show that it is more likely than not that he would have been acquitted but for the error. *Dominguez Benitez*, 542 U.S. at 83 n.9, 124 S. Ct. at 2340 n.9; *Triggs*, 963 F.3d at 717 (citing *Williams*, 946 F.3d at 973). He need only convince the court that there is a reasonable probability that the result of the trial might have been different—that is, one sufficient to undermine confidence in the actual outcome of the trial, *see Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Cone*, 556 U.S. at 470, 129 S. Ct. at 1783, or put another way, a plausible, non-negligible chance of a more favorable result, s*ee Sanchez v. Sessions*, 894 F.3d 858, 863 (7th Cir. 2018). *See also Myers v. Neal*, — F.3d —, 2020 WL 4462619, at *9 (7th Cir. Aug. 4, 2020) (likelihood of a different result "must be substantial") (quoting *Harrington v. Richter*, 562 U.S. 86, 111-12, 131 S. Ct. 770, 792 (2011)). As the government agrees, a more favorable outcome includes a deadlocked jury as well as an acquittal, as neither is a conviction. Gov. Remand Br. 13–14; *see United States v. Nicolaou*, 180 F.3d 565, 570 (4th Cir. 1999) (citing *United States v. Hastings*, 134 F.3d 235, 240 (4th Cir. 1998)).

The error in this case relieved the government of the burden of proving an essential element of offense beyond a reasonable doubt. The error was not so fundamental that it qualifies as structural. *Maez*, 960 F.3d at 957–58. Nonetheless, it was a serious error, in the sense that it both omitted a key element of the government's case and deprived Cook of the right to have the jury assess the sufficiency of that evidence as to that element. *See United States v. Holmes*, 93 F.3d 289, 294 (7th Cir. 1996); *United States v. Perez*, 43 F.3d 1131, 1139 (7th Cir. 1994); *United States v. Kerley*, 838 F.2d 932, 937–39 (7th Cir. 1988).

We have previously said that although the "failure to instruct clearly on the elements of the offense is not always plain error … the gravity of such an error makes reversal the usual outcome in such circumstances." *Perez*, 43 F.3d at 1139 (citing *Kerley*, 838 F.2d at 938–39); *see also United States v. Wheeler*, 540 F.3d 683, 690 (7th Cir. 2008); *Holmes*, 93 F.3d at 294; *United States v. Shetterly*, 971 F.2d 67, 73 (7th Cir. 1992). Only in the exceptional case will prejudice not be found. *Perez*, 43 F.3d at 1139 (citing *Kerley*, 838 F.2d at 939). The exceptional case includes one in which the jury necessarily found facts that were the functional equivalent of the omitted element of the offense, *see United States v. Parmelee*, 42 F.3d 387, 393–95 (7th Cir. 1994), or where the evidence was so strong or the defense so implausible as to leave no doubt that the jury would have convicted the defendant if properly advised as to the essential element, *see Kerley*, 838 F.3d at 939 (although jury instruction failed to make clear that knowledge of duty to register for draft was essential element of failure-to-register offense, error was not so egregious as to require retrial "where the issue of guilty knowledge was not contestable and was barely if at all contested"); *Williams*, 946 F.3d at 974 (collecting section 922(g)(1) felon-in-possession decisions finding no reasonable probability of a different result post-*Rehaif*, where defendants had served substantial prison terms for prior felony convictions and thus could not plausibly contend they did not know they held status of felons at time they possessed firearms).

Given the nature of the element omitted from the indictment and the jury instructions, we do not think this qualifies as an exceptional case. The government was required to prove that Cook had knowledge of a status that has both legal and

factual elements and is not binary in the way that one's status as a convicted felon is, for example. *See Triggs*, 963 F.3d at 715–16 (distinguishing "the straightforward definition" of felon who is barred from possessing firearm by section 922(g)(1) from the "comparative complexity" of the definition of "misdemeanor crime of domestic violence" found in section 922(g)(9)). One can have used marijuana without necessarily being an "unlawful user" who is prohibited from possessing a firearm. This makes the probability stronger that the jury might not have convicted Cook. Indeed, the fact that the jury was unable to reach a verdict on the false statement count, which likewise required proof that Cook knew he was an unlawful user, makes plain that Cook's conviction on the section 922(g)(3) charge was not inevitable.

Knowledge of one's status under section 922(g)(3) encompasses questions of law: Cook had to know both that he was using a controlled substance and that his use was "unlawful". *United States v. Bowens*, 938 F.3d 790, 797–98 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 814, 2572 (2020); *see Rehaif*, 139 S. Ct. at 2198 ("The defendant's status as an alien 'illegally or unlawfully present in the United States' [*see* § 922(g)(5)(A)] refers to a legal matter, but this legal matter is what the commentators refer to as a 'collateral' question of law."). Knowledge that a substance is controlled is the more straightforward of these two propositions, but even that may be tricky in a State like Illinois, where use of marijuana is now legal as a matter of state but not federal law. *Compare* 410 Ill. Comp. Stat. Ann. 705/1-7 *with* 21 U.S.C. §§ 812 (c)(10) (designating marijuana a Schedule I controlled substance) and 844 (generally proscribing simple possession of controlled substances). But Cook was arrested in

Wisconsin, where state law prohibits marijuana possession and use, *see* Wis. Stat. §§ 961.14(4)(t), 961.41(3g)(e); *United States v. Paige*, 870 F.3d 693, 700 & n.19 (7th Cir. 2017); and the parties appear to assume for present purposes that so long as Cook had knowledge that marijuana use was proscribed in a general sense, this would be enough to show that he knew he was using a controlled substance. *See* Cook Remand Br. 24 ("Cook is *not* claiming that in order to meet its *Rehaif* burden, the government would have to present *affirmative* evidence that Cook understood the statutory phrase 'unlawful user' or was familiar with the Controlled Substances Act.") (emphasis in original).

Knowledge that one is an *unlawful* user turns on his awareness of somewhat nuanced factual aspects of his drug use. As our analysis with respect to the "unlawful user" jury instruction demonstrates, unlawful use of a drug entails (1) use other than as lawfully prescribed by a physician, but also (2) use that was both regular and ongoing at the time that the defendant possessed a gun. So Cook would have to realize that he was using marijuana other than as prescribed by a physician, and that his use was sufficiently regular and ongoing at the time he possessed the firearm as to make it "unlawful" in the sense that this and other cases explain (as there is no statutory standard).

As we consider what the record tells us about Cook's knowledge in these respects, our focus at the third step of the plain error inquiry—whether the error affected Cook's substantial rights (*i.e.*, prejudice)—must be confined to the jury record alone. *Maez*, 960 F.3d at 959–63. Evidence that lies outside of

that record (*e.g.*, evidence in the defendant's pre-sentence report) comes into play only at the fourth prong of the inquiry, wherein the court exercises its discretion to correct plain errors that seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 962 (quoting *Olano*, 507 U.S. at 736, 113 S. Ct. at 1779).

There certainly is evidence in the trial record that would have supported a jury finding that Cook knew he was an unlawful user of a controlled substance. He obviously knew what the scope of his own marijuana use was: he told an investigator he had been using marijuana for nearly ten years to "mellow[ ] [himself] out" (R. 22-1 at 3), and he acknowledged that he had smoked two blunts on the day of his arrest. And the officers who pulled him over could smell marijuana, confirming that his use was recent. So a properly instructed jury certainly could have found that his use was both regular and ongoing as of the date of his arrest. Given the evidence presented at trial, the jury also might fairly have inferred that Cook knew marijuana was a controlled substance that was illegal for him to possess and use. As we have noted, marijuana possession and use was (and is) prohibited under Wisconsin as well as federal law. There was no indication that Cook had ever been prescribed marijuana for medicinal purposes—and, indeed, Wisconsin does not permit medical marijuana use, *see Paige*, 870 F.3d at 700 n.19.[8] Moreover, as the government

---

[8]   Cook had also signed an ATF Form 4473 in connection with his purchase of the gun which reminded him that regardless of any contrary provision of state law, marijuana use was proscribed by federal law (Gov.

(continued...)

points out, Cook had stashed a half-ounce quantity of marijuana in his groin area, a fact which could be construed to suggest that he was hiding the marijuana from authorities because he knew his possession to be illegal.

But the evidence was by no means overwhelming on these points, and Cook's briefs on remand have convinced us that he did have a plausible defense to make as to his knowledge. Even if we take it as a given that Cook understood marijuana was a controlled substance that was illegal for him to possess and use, we do not regard it as inevitable that the jury would have found that Cook knew he was an unlawful user as the case law defines that term. Particularly in view of the regularity and contemporaneity components of unlawful use, it is possible for any given user to think that his use falls outside the range of regular, ongoing use. Past, regular use would not qualify as ongoing use if it has come to a definitive end before one possesses a gun, for example, and likewise current but isolated use (perhaps only when offered at the occasional social gathering) likewise would not count as regular use. Cook, of course, had confessed to a long-term pattern of use that included the day of his arrest, and he has not suggested that his use was sporadic. But his counsel points out that Cook detailed that history of use after the interviewing police officer noted that "shake" (loose marijuana), packaging, and scales had been found in Cook's car during prior traffic stops—all of which

---

[8] (...continued)
Trial Ex. No. 1), although the government does not place much weight on this piece of evidence in its plain error analysis. *See* Government Remand Br. 10.

were consistent with distribution of marijuana—and asked him in a leading manner, "[S]o it's clear you use, right? You just use. Is that what you're saying?" R. 22-1 at 2. Cook might have surmised that confessing to substantial use of marijuana was the prudent thing for him to do, as distribution might well have exposed him to more severe criminal penalties. But even if we assume that Cook did not exaggerate the extent of his own use, his perception of whether that use qualified as unlawful was necessarily subjective. That Cook *ought* to have known his use was unlawful would not suffice to convict him; he had to *actually know* his use was unlawful. *See Rehaif*, 139 S. Ct. at 2208 (Alito, J., dissenting); *United States v. Balde*, 943 F.3d 73, 90 (2d Cir. 2019).

Interestingly, the jury was asked to evaluate Cook's knowledge in relation to the false statement charge stemming from the ATF Form 4473 he completed in connection with the purchase of his gun. As to that charge, the government was required to show that Cook had falsely certified that he was not an unlawful user of marijuana and that he knew his certification was false when he made it, *see United States v. Petitjean*, 883 F.2d 1341, 1346 (7th Cir. 1989); and the jury was instructed accordingly. R. 44 at 5; R. 56 at 67. Cook's counsel argued to the jury that the ATF form was unclear and that his client could only have guessed at whether he qualified as an unlawful user for purposes of the certification. R. 56 at 82–83. Although we have no window into the jury's deliberations, it is possible that some number of the jurors may have agreed with that argument, given the deadlock on this count. Given that the jury would be presented with a quite similar question, post-*Rehaif*, on the possession charge, it is not implausible to

think that a jury properly instructed as to the requirement that Cook must have known he was an unlawful user of marijuana, might have also deadlocked on the possession count.

On balance, we are convinced that the omission in the indictment and the instructions did affect Cook's substantial rights. The question is not whether we find Cook's potential defense to the knowledge element persuasive, *see Maez*, 960 F.3d at 961, but whether there is a reasonable probability that one or more jurors might have done so. We conclude that the answer to that question is yes.

Which brings us to the fourth step of the plain-error inquiry: whether we should exercise our discretion to grant Cook a new trial. Additional evidence found in the pre-sentence report bears on that inquiry; as with the trial record, that evidence points in different directions. First, prior to his arrest in this case, Cook had been cited and adjudged liable on three occasions for marijuana possession in violation of local ordinances (R. 70 ¶¶ 47, 53, 59), and he had also been convicted of disorderly conduct in 2014 that involved hiding marijuana in his groin area just as he did in this case (R. 70 ¶ 57), all of which tends to confirm his awareness that marijuana is a controlled substance and could be understood as confirmation of his ongoing use of marijuana at the time of those incidents. But, second, Cook suffers from learning disabilities and cognitive deficits (R. 70 ¶¶ 94–96) and has, by his own account, received Social Security disability benefits since he was a child, (R. 70 ¶ 93). A mental status evaluation conducted in 2012, when Cook was 18, suggested that his cognitive functioning was in the borderline to sub-average range. A measure of his IQ using the Wechlser Adult Intelligence Scale-Fourth Edition produced a

Full Scale IQ of 63, which would put him in the "extremely low" classification (although previous testing had put him in a borderline classification, and the 2012 evaluation itself indicated that the result should be viewed with caution given Cook's difficulties with attention, focus, and pace during testing). R. 70 ¶¶ 94, 96. He never completed high school nor did he earn a G.E.D. R. 70 ¶¶ 104, 106. Arguably, Cook's limited education and cognitive deficits might have made it more difficult for him to appreciate whether his pattern of marijuana usage rendered him an "unlawful user." *Cf. Triggs*, 963 F.3d at 715–16 (noting that relative complexity of section 922(g)(9)'s ban on possession of a firearm by one previously convicted of a misdemeanor crime of domestic violence made defendant's contention that he did not know he held prohibited status more plausible)

The government's case against Cook was certainly solid, and, again, we view it as quite possible that a properly instructed jury would have convicted him. But taking into account the totality of the evidence, including evidence beyond the trial record, we are not convinced that Cook's conviction was inevitable. Especially in view of the fact that the jury deadlocked on the false statement count which, like the possession count (in view of *Rehaif*) requires that Cook knew he was an unlawful user of marijuana, the possibility that the jury might have either deadlocked or acquitted on the possession count still strikes us as a reasonable one. We can only conclude that the *Rehaif* error is one that does affect the fairness, integrity, and public reputation of the proceeding; and we therefore exercise our discretion in favor of granting Cook relief in the form of a new trial.

**IV.**

We once again reject Cook's contentions that the term "unlawful user" found in section 922(g)(3) is unconstitutionally vague, that the statute's ban on the possession of a firearm by an unlawful user of a controlled substance impermissibly burdens his Second Amendment rights, and that the trial court did not properly instruct the jury on who constitutes an "unlawful user" of a controlled substance.

However, in view of the Supreme Court's intervening decision in *Rehaif*, and what we find to be a reasonable probability that the outcome of the trial might have been different had the government been required to prove, and had the jury been required to find, that Cook knew he was an unlawful user of marijuana, we reverse the conviction and remand for a new trial. Circuit Rule 36 shall not apply on remand.

We once again commend everyone involved in the briefing and arguing of this case, along with Judge Peterson and Magistrate Judge Crocker for their thorough and careful handling of the case below. Their dedication and hard work have greatly aided this court's deliberation and resolution of the appeal. The new trial we have ordered is due solely to the Supreme Court's intervening decision in *Rehaif* and certainly not owing to any omission on their part.

REVERSED AND REMANDED FOR NEW TRIAL